David McDevitt (030761)
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
602-388-8898
866-317-2674 facsimile
dmcdevitt@consumerlawinfo.com
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lydia Bultemeyer, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> CenturyLink, Inc., <br><br> Defendant. | Case No. 2:14-cv-02530-SPL <br><br> **PLAINTIFF'S REPLY TO CENTURYLINK'S RESPONSE TO MOTION TO RECONSIDER DISMISSAL FOR LACK OF STANDING** |

Pursuant to the Court's order (Doc. 88) dated February 24, 2017, Plaintiff Lydia Bultemeyer ("Plaintiff") hereby submits her reply to the response filed by Defendant CenturyLink, Inc. ("CenturyLink") regarding Plaintiff's motion for reconsideration.

## I.      Reconsideration is appropriate.

This case presents a rare instance where reconsideration is appropriate.   The Court incorrectly analyzed the issue of standing in its February 15, 2017 order by comparing the instant matter to data retention and security breach cases—where consumers had already voluntarily given private information to the defendants. In doing so, it unnecessarily focused on the lack of an allegation that CenturyLink *further*

disseminated her credit report—when the dissemination of her report from Trans Union *to* CenturyLink was an invasion of her privacy sufficient to confer standing.

Recognizing that it had no legitimate need for her consumer report between Steps 4 and 5 of its checkout process—and that its employees *knew* of this website issue and *continued* accessing consumers' credit files because it was more convenient— CenturyLink urges the Court to find that *Syed* is inapposite.

On the same day that the instant matter was dismissed, however, this Court relied on *Syed* in finding standing for a violation of the FACTA, a different subsection of the FCRA which prohibits printing certain credit card information on receipts. In that case, *Deschaaf*, there was no dissemination of the consumer's information to anyone at all. This continues a trend among the district courts in the Ninth Circuit following *Syed* of rejecting a narrow view of standing under the FCRA. What's more, the majority of district courts have found standing under § 1681b(f) involving an impermissible credit pull following the decision in *Spokeo*—even outside the employment context and based solely on privacy concerns.

CenturyLink is right about one thing: the FCRA was designed to strike a balance between business needs and consumer privacy. The Court's holding, however, significantly erodes this privacy protection. Because Plaintiff did not initiate a business transaction with CenturyLink, let alone one for which it had a legitimate business need for her credit report, she had a congressionally protected right for it to remain private. The Court should modify its opinion and find CenturyLink liable for violating § 1681b(f).

Plaintiff's Reply to Defendant's Response to Motion for Reconsideration - 2

II.   **The Ninth Circuit is likely to find that Plaintiff has standing.**

While the district courts are clearly "divided as to whether invasion of privacy" stemming from a "violation of the FCRA is a sufficiently concrete injury," *Landrum v. Blackbird Enterprises, LLC*, No. CV H-16-0374, 2016 WL 6075446, at *4 (S.D. Tex. Oct. 3, 2016), the Ninth Circuit has already spoken on a nearly identical issue, and it is incredibly likely that it would remand upon appellate review.

A.   **The Court's holding would virtually eliminate FCRA's consumer privacy protections.**

CenturyLink argues that FCRA must not be read "to codify intangible privacy rights into a concrete harm." Doc. 90 at 9 (emphasis added).  But this is *exactly* what the FCRA was intended to do.  And the Supreme Court has reiterated that "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.' "  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992)).  "[A] plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified."  *Id.*  Here, that harm is the invasion of consumer privacy.

It is abundantly clear that Congress determined that accessing one's consumer report without a permissible purpose was a grave violation of a consumer's privacy. While FCRA imposes "a host of requirements concerning the creation and use of consumer reports," *id*. at 1545, this is the only type of violation for which Congress imposes heightened civil liability and even criminal liability, under certain circumstances. *See* 15 U.S.C. § 1681n(a)(1)(B) (imposing maximum $1,000 statutory

damages for knowingly obtaining a consumer report without a permissible purpose); 15 U.S.C. § 1681q ("Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency ["CRA"] under false pretenses shall be fined under title 18, imprisoned for not more than 2 years, or both.").

While there is no doubt that FCRA was designed to balance business needs with consumer privacy, the Court's ruling would all but eliminate the consumer privacy side of this equation. The only consumers who would even be able to maintain, let alone prevail on, a cause of action under 1681b(f) would be those who can plausibly allege economic harm or mental anguish resulting from the subsequent release of their information or a diminished credit score. In the latter case, this would require the consumer to know her credit score, before and after the pull, and show that the reduction in score resulted in less attractive terms in a subsequent credit transaction.

*Spokeo* explained that these types of additional harm are not required. *See Perrill v. Equifax Info. Servs.*, LLC, No. A-14-CA-612-SS, 2016 WL 4572212, at *4 (W.D. Tex. Aug. 31, 2016) (explaining that in cases where "alleged loss of privacy injury was insufficient under the FCRA," the courts "improperly focus on the plaintiffs' failure to allege actual damages"). Congress enacted the permissible purposes provisions of FCRA to prevent unfettered access to the credit files that the CRAs maintain on consumers, finding that this invaded their privacy. The Court's holding allows such access to go almost entirely unchecked.

**B.      The Court's "dissemination" analysis was ultimately flawed.**

The Court incorrectly focused on the fact that CenturyLink did not disseminate Plaintiff's Trans Union report to anyone else. It was enough that it willfully (and, in fact, knowingly)[1] obtained her report without a permissible purpose, or, rather, that CenturyLink caused Trans Union to disseminate information *to it*. "[I]t has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's privacy that constitutes a concrete injury sufficient to confer standing to sue." *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 636 (E.D. Va. 2016). Adopting a standard that requires "dissemination" *by* (as opposed to dissemination *to*) the defendant would result in outcomes inconsistent with the design of FCRA's "permissible purposes" provisions.

To promote efficiency, Congress imposed a lesser obligation on the CRAs to ensure that consumer reports were being furnished for permissible purposes, only requiring them to "maintain *reasonable* procedures…to limit the furnishing of consumer reports to the purposes listed under section 1681b." *See* 15 U.S.C. § 1681e(a) (emphasis added). Meanwhile, Congress prohibited outright any person from obtaining a consumer report unless it is for a permissible purpose. *Id*. at § 1681b(f). To further insulate a CRA from liability when a customer improperly accesses its credit files, Congress declared that a person who obtains a consumer report "under false pretenses

---

[1] Importantly, a negligent violation is not actionable without actual damages. *Compare* 15 U.S.C. § 1681n(a)(1)(A) *with id*. at § 1681o(a)(1).

or knowingly without a permissible purpose" is liable <u>to the CRA</u> for its actual damages or $1,000.  *Id.* at § 1681n(b).

Here, Plaintiff's private and protected information *was*, in fact, disseminated: by Trans Union to CenturyLink.  Yet, it was CenturyLink, not Trans Union, with the greater obligation to ensure that it was not accessing consumer reports without a permissible purpose.  It would be an odd result, then, for Plaintiff to have standing to bring a claim against the CRA[2], Trans Union, for its improper dissemination of the information, but not have standing against CenturyLink, which took the affirmative steps to cause the dissemination and which the law holds to a higher standard.

### C.    The injury is identical as in *Syed*.

CenturyLink points to the differences between the conduct which gives rise to a claim under § 1681b(b)(2) against an employer versus a claim under § 1681b(f ) against any person outside the employment context.  But this argument ignores the reality that the injury which the Ninth Circuit determined was concrete in *Syed* is the same in that case as it is here: the invasion of privacy from the disclosure of the consumer's report.

While the Ninth Circuit noted that § 1681b(b)(2) "creates a right to information" and "enabl[es] applicants to withhold permission to obtain the report," a violation of these preceding steps are not what gives rise to the claim.  *Syed v. M-I, LLC*, 846 F.3d

---

[2] At least one district court *has* found that a plaintiff has standing to bring a claim against the CRA for violating § 1681e(a). *See Perrill*, 2016 WL 4572212 at *4 ("Considering this history and Congress's judgment, the Court finds an invasion of privacy within the context of the FCRA constitutes a concrete harm that meets the injury-in-fact requirements.").

1034, 1040 (9th Cir. 2017).  It is only when the employer *obtains* the report that the injury has occurred. 15 U.S.C. § 1681b(b)(2)(A) ("a person may not procure a consumer … for employment purposes … unless…"). If a prospective applicant were merely presented with a flawed § 1681b(b)(2) disclosure, but no report was ever obtained, not only would he lack Article III standing, he would lack statutory standing.  *Id.*

Thus, the "right to information" is only meaningful to the extent that its deprivation led to—or ran the risk of leading to—the ultimate concrete harm: impermissibly obtaining a consumer's report.  *Accord Landrum v. Blackbird Enterprises, LLC*, No. CV H-16-0374, 2016 WL 6075446, at *4 (S.D. Tex. Oct. 3, 2016) (finding privacy argument failed because the plaintiff "does not allege that his purported authorization was ineffective, only that Defendants lacked 'proper' written authorization because of the incorrectly formatted disclosure"); *In re Michaels Stores, Inc., Fair Credit Reporting Act (FCRA) Litig.*, No. 2615, 2017 WL 354023, at *10 (D.N.J. Jan. 24, 2017) ("the applicant's consent, after being informed that the employer would be seeking such a report, vitiates any claim of a privacy violation").

Just as an employer may only obtain an applicant's consumer report if it first makes a disclosure and gets consent, CenturyLink may only obtain Plaintiff's consumer report if she initiates a business transaction with it and if it has a legitimate business need for the information. That the prerequisites for lawfully invading a consumer's privacy differ in the employment context is a distinction without meaning. These provisions were added to ensure job applicants were aware that consumer reports were being used in a context in which they might not expect it.  Whereas, consumers

generally expect reports to be obtained about them if and when they initiate business transactions where their creditworthiness is a relevant consideration. Nevertheless, violations of § 1681b(f) and § 1681b(b)(2) still result in the same concrete harm.

### D. The majority of district courts to review § 1681b(f) in light of *Spokeo* have found standing.

Numerous district courts have determined that one's privacy interest *alone* is sufficient to confer standing outside the employment setting. *See Griffin v. Bank of Am.*, N.A., No. 1:16 CV 1259, 2016 WL 7487724, at *4 (N.D. Ohio Dec. 28, 2016) ("the alleged violations committed by Defendants when they obtained Ms. Griffin's credit report without a permissible purpose constitute a concrete harm"); *Firneno v. Radner Law Grp.*, PLLC, No. 2:13-CV-10135, 2016 WL 5899762, at *4 (E.D. Mich. Sept. 28, 2016) ("the Court finds that the Plaintiffs' right to privacy is 'more substantive than procedural' such that the alleged violation of it is a concrete harm"); *Perrill*, 2016 WL 4572212, at *4 ("In sum, Plaintiffs' alleged invasion of privacy is a concrete harm."). *See also Green v. RentGrow, Inc.*, No. 2:16-CV-421, 2016 WL 7018564, at *6 (E.D. Va. Nov. 10, 2016), *report and recommendation adopted*, 2016 WL 7031287 (E.D. Va. Nov. 30, 2016) (privacy infringement and reduced credit score both created standing, and distinguishing *Braitberg v. Charter Commc'ns, Inc*., 836 F.3d 925 (8th Cir. 2016), on the basis that defendant, RentGrow, "never had authorization to access the report").

In fact, the only case that Plaintiff has found in which the invasion of privacy was held insufficient to confer standing outside of the employment context (1) involved a creditor obtaining a debtor's consumer report after the creditor-debtor relationship had

expired—and thus, the creditor had permission to access the consumer's report at some point and likely had done so in the past—and (2) considered the Eighth Circuit's opinion in *Braitberg* to be binding.  *See Detter v. KeyBank N.A.*, No. 16-00498-CV-W-ODS, 2016 WL 6699283, at *1 (W.D. Mo. Nov. 14, 2016), *vacated and remanded*, No. 16-00498-CV-W-ODS, 2016 WL 7242556 (W.D. Mo. Dec. 13, 2016) (modified to clarify that dismissal was without prejudice and remanding to state court).

**E.      District courts in the Ninth Circuit—including this Court—have followed *Syed* to find standing on other types of FCRA claims.**

District courts in the Ninth Circuit have applied *Syed* in finding standing for violations of many other provisions of the FCRA. *See Artus v. Experian Info. Sols., Inc.*, No. 5:16-CV-03322-EJD, 2017 WL 346022, at *3 (N.D. Cal. Jan. 24, 2017) (rejecting the argument that "not disclos[ing] an actual injury from [defendant's] alleged violation of § 1681s-2(b)" meant plaintiff lacked standing); *Deschaaf v. Am. Valet & Limousine Inc.*, No. CV-16-03464-PHX-GMS, 2017 WL 610522, at *4 (D. Ariz. Feb. 15, 2017) (printing expiration date on credit card receipt, without more, sufficient for standing); *Benton v. Clarity Servs., Inc.*, No. 16-CV-06583-MMC, 2017 WL 345583, at *1 (N.D. Cal. Jan. 24, 2017) (standing found for § 1681b(c)(1)(B)(i), "disclosing consumer reports to persons or entities that do not have a permissible purpose for obtaining such consumer reports," but not for § 1681b(e)(5)(A), failing to maintain a toll-free telephone number to process opt-out requests for "pre-screened offers of credit and insurance").

In *Deschaaf*, a plaintiff brought suit under the FACTA after she "received one or more receipts from" a parking lot facility "on which were printed the expiration date of

her credit card or debit card and the last four digits of her card number." 2017 WL 610522 at *1 (internal quotations omitted).  FACTA, a series of amendments to the FCRA, which Congress enacted "to combat identity theft," *id.* at *3, prohibits merchants from "print[ing] … the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1).

Judge Snow first observed that "[c]ourts around the country have grappled with the application of *Spokeo* to cases under FCRA and FACTA."  *Deschaaf*, 2017 WL 610522, at *3.  He then noted that "[w]hile there is no such binding authority on the FACTA violations at issue here, *Syed* confirms that this Court must approach the standing question here by analyzing whether the alleged violations deprive, or cause a real risk of depriving, consumers of substantive rights created by FACTA."  *Id.*

Even though there was no allegation that the printing of the expiration date had led to economic damages, Judge Snow explained that the plaintiff had standing:

> A person…who prints an expiration date on a receipt…does not simply violate a procedural provision of FACTA but creates a real risk of identity theft—the very harm that FACTA was enacted to combat. There is a real risk that the customer's right to the privacy of their credit or debit card information is violated. Nor is this harm made harmless when, as here, the risk fails to materialize because no potential identity thief actually sees the receipt. Even in this situation, the consumer must take additional steps to ensure the safety of her identity; she may not simply crumple the receipt and throw it into a nearby trash can, but must review it to assess what was printed, hold on to it, and perhaps shred it or cut it up later. The inconvenience may be minor; but the additional inconvenience that a consumer must undertake in order to secure their own rights, when a statute places that burden on others, is surely a concrete harm.

*Id.* at *4

As shown above, this Court took a very expansive view of standing in *Deschaaf.*

Notably, prior to *Syed*'s release, Judge Snow correctly applied the *Spokeo* framework to claims brought under § 1681b(b)(2). *See Mix v. Asurion Ins. Servs. Inc.*, No. CV-14-02357-PHX-GMS, 2016 WL 7229140, at *6 (D. Ariz. Dec. 14, 2016), *reconsideration denied*, 2017 WL 131566 (D. Ariz. Jan. 13, 2017). The Court should follow the same approach in finding that CenturyLink's invasion of Plaintiff's privacy, in violation of § 1681b(f), constitutes a concrete harm sufficient to confer standing.

## III.   Conclusion

Plaintiff suffered a concrete harm. CenturyLink now possesses private information about her, when it was never legally permitted to obtain it in the first place. This was no mere accident. CenturyLink knowingly obtained consumer reports about potential customers before they placed an order and without a legitimate business need. Congress clearly found this a reprehensible violation of consumer privacy, as shown by the specific provisions creating heightened liability for such conduct. Striking a balance between business efficiency and consumer privacy means holding businesses like CenturyLink accountable when they intentionally violate the FCRA in this manner.

Respectfully submitted on March 17, 2017.

By: /s/ David McDevitt
David McDevitt (030761)
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
(602) 845-5969
(866) 317-2674 facsimile
dmcdevitt@consumerlawinfo.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on March 17, 2017, I filed the foregoing document with the Clerk for the U.S. District Court of Arizona using the CM/ECF system which sent notification of the same to Defendant through counsel of record below as follows:

Peter J Korneffel, Jr.
Bryan Cave LLP - Denver, CO
1700 Lincoln, Ste. 4100
Denver, CO 80203
303-866-0233
Fax: 303-866-0200
Email: peter.korneffel@bryancave.com

Jacob Alexander Maskovich
Bryan Cave, LLP
2 N Central Ave.
Ste. 2200
Phoenix, AZ 85004-4406
602-364-7000
Fax: 602-364-7070
Email: jamaskovich@bryancave.com

Matthew M Petersen
Bryan Cave LLP - Denver, CO
1700 Lincoln, Ste. 4100
Denver, CO 80203
303-861-7000
Fax: 303-866-0200
Email: matt.petersen@bryancave.com

s/ David McDevitt
David McDevitt