**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lydia Bultemeyer, ) | No. CV-14-02530-PHX-SPL |
| ) | |
| Plaintiff, ) | |
| vs. ) | **ORDER** |
| ) | |
| CenturyLink Incorporated, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Before the Court is Plaintiff's Motion to Certify Class (Doc. 138). For the reasons that follow, the motion will be denied without prejudice.

**I.   BACKGROUND**

On April 6, 2014, Plaintiff Lydia Bultemeyer accessed Defendant CenturyLink, Inc.'s website and began an online order for residential internet services. (Doc. 1 ¶ 20). Defendant's online order process involved five steps. (Doc. 1 ¶ 18). Plaintiff completed the first four steps, which included entering her address and other personal information, selecting which service options she wanted to purchase, and clicking a checkbox indicating acceptance of terms and conditions. (Doc. 1 ¶ 21; Doc. 114 ¶¶ 23–43). After step four, Defendant automatically ran a credit report on Plaintiff, as it did for all consumers between steps four and five. (Doc. 1 ¶¶ 23, 24). Plaintiff reached step five—which asked for payment information and then allowed the customer to submit the order for processing—but she decided not to place an order and never completed step five. (Doc. 1 ¶¶ 22, 25).

On November 14, 2014, Plaintiff filed this putative class action alleging that Defendant violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b, by obtaining her credit report, and those of putative class members, without a permissible purpose. (Doc. 1). Defendant asserts that it did have a permissible purpose under § 1681b(a)(3)(F)(i) because it had "a legitimate business need for the information in connection with a business transaction . . . initiated by the consumer," arguing that each putative class member "initiated" a business transaction by completing the first four steps of the order process. (Doc. 30 ¶ 3–4).

The Court bifurcated the stages of this case, first allowing discovery and dispositive motions on Plaintiff's individual claim before proceeding to the class certification phase. (Doc. 34). After briefing of cross-motions for summary judgment (Docs. 64, 72), the Court dismissed the case for lack of subject matter jurisdiction, finding that Plaintiff suffered no concrete injury and thus lacked standing. (Doc. 85). On appeal, the Ninth Circuit reversed and remanded, holding that every violation of § 1681b violates a privacy interest sufficient to confer standing. (Doc. 99). This Court subsequently denied the parties' renewed cross-motions for summary judgment (Docs. 109, 111), finding that there were material issues of fact remaining as to whether Defendant had a permissible purpose for pulling Plaintiff's credit report. (Doc. 116).

The case then proceeded to class discovery, culminating in the pending Motion to Certify Class (Doc. 138). Defendant filed a Response in opposition to the Motion (Doc. 146), to which Plaintiff replied (Doc. 152). On April 5, 2022, the Court held Oral Argument (Doc. 158). The Court now addresses the Motion.

**II.   LEGAL STANDARD**

Rule 23 of the Federal Rules of Civil Procedure ("Rule") governs class actions. Under Rule 23(a), a member of a class may sue as a representative party only if the class satisfies four prerequisites: numerosity, commonality, typicality, and adequacy of representation. After satisfying the prerequisites, the plaintiff must then show that the class falls into one of three categories under Rule 23(b). Here, Plaintiff seeks certification

under Rule 23(b)(3). (Doc. 138 at 7). Rule 23(b)(3) requires that a plaintiff show predominance of common questions and the superiority of a class action.

"[P]laintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23 . . . ." *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258, 275 (2014); *see Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The court must rigorously analyze the facts of a class action to ensure that it comports with Rule 23. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). In doing so, however, the court will consider merits questions only to the extent relevant to determining whether the proposed class has met Rule 23's requirements. *Amgen Inc.*, 568 U.S. at 465–66.

### III. DISCUSSION

Plaintiff asks the Court to certify the following class:

> Every individual in the United States about whom CenturyLink obtained a consumer credit report prior to such individual submitting an order for CenturyLink's services, using the personal information entered into CenturyLink's ecommerce website, from November 14, 2012 through the present.

(Doc. 138 at 3). In opposition, Defendant argues that the class definition is too broad, that some of the class members lack standing, that the class fails to meet the Rule 23(a) prerequisites, and that it fails to meet the Rule 23(b)(3) requirements. The Court will address these issues in turn.

#### a. **Class Definition**

Initially, Defendant objects that Plaintiff's Motion impermissibly seeks certification of a class that is broader than the one stated in her Complaint. The Complaint set forth the following class definition:

> Every individual in the United States about whom, [i]n the two years prior to the filing of this complaint, CenturyLink obtained a consumer report using the personal information the individual entered into CenturyLink's website before such

3

individual placed an order for CenturyLink's services. (Doc. 1 at 5). Thus, the Complaint defined a class consisting only of consumers whose credit reports were obtained in the two years prior to the filing of the Complaint—from November 14, 2012 to November 14, 2014. (Doc. 1 at 5). But Plaintiff now seeks to certify a class consisting of consumers whose credit reports were obtained "from November 14, 2012 through the present." (Doc. 138 at 3).

The Ninth Circuit has not decided whether the class definition in the complaint binds the scope of the class that can be certified, and district courts within the Ninth Circuit have applied different standards. *See Little v. Grand Canyon Univ.*, No. CV-20-00795-PHX-SMB, 2022 WL 266726, at *4 (D. Ariz. Jan. 28, 2022) (citing cases). Even the more lenient courts, however, certify classes that are broader than the one in the complaint only "if the proposed modifications to the class definition are minor, require no additional discovery, and cause no prejudice to defendants." *Davis v. AT&T Corp.*, No. 15cv2342-DMS (DHB), 2017 WL 1155350, at *2 (S.D. Cal. Mar. 28, 2017).

Initially, Plaintiff argues that the class she seeks to certify is not in fact broader than the one stated in the Complaint because the Complaint includes a claim on behalf of a Rule 23(b)(2) class for injunctive relief, which is necessarily forward-looking. (Doc. 152 at 2). This argument is a non-starter. Plaintiff does not seek certification of a Rule 23(b)(2) class, and the Court sees no reason why the inclusion of a Rule 23(b)(2) class in the Complaint should allow Plaintiff to expand her proposed Rule 23(b)(3) class seeking monetary damages at the class certification stage. And more fundamentally, regardless of the inclusion of a claim for injunctive relief, Plaintiff's Complaint set forth only one class definition, which defined only a two-year class period.

Instead, Plaintiff now seeks to expand the scope of the class period from two years to nearly ten years. Certainly, multiplying the class period almost fivefold is not a minor change. Moreover, the parties agree that Defendant's online order process and process for running credit reports has changed since November 2014, suggesting that the expanded class definition threatens to extinguish the possibility of compliance with the Rule 23

requirements and could prejudice Defendant due to a lack of fair notice as to the scope of the class during the class discovery phase. Plaintiff offers no reason for why she could not have set forth a more expansive class definition at the outset nor why she did not move to amend the complaint to expand the class period during the last seven years of litigation. Accordingly, the Court will not certify a class with a class period broader than the one set forth in the Complaint, from November 14, 2012 to November 14, 2014. *See In re Wal-Mart Wage & Hour Emp. Pracs. Litig.*, No. 2:06-CV-00225-PMP-PAL, 2008 WL 3179315, at *6 (D. Nev. June 20, 2008) (rejecting certification of a proposed class with a class period eight years longer than the one in the complaint).

### b. Article III Standing

Next, Defendant argues that putative class members who completed an order with Defendant lack Article III standing because they did not suffer an injury. (Doc. 146 at 29–30). Even if true, Ninth Circuit precedent is clear that this does not defeat certification: "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). Moreover, Defendant is incorrect that putative class members did not sustain an injury according to Plaintiff's allegations. The Ninth Circuit's decision on appeal in this case squarely addresses this argument:

> Because "every violation of § 1681b(f)(1) 'offends the [substantive privacy] interest that the statute protects,'" a plaintiff "has standing to vindicate her right to privacy under the FCRA when a third-party obtains her credit report without a purpose authorized by statute, regardless whether the credit report is published or otherwise used by that third-party."

*Bultemeyer v. CenturyLink Inc.*, 788 F. App'x 558, 559 (9th Cir. 2019) (quoting *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 490, 493 (9th Cir. 2019)). Thus, if Defendant violated the FCRA by pulling consumers' credit reports between steps four and five as alleged, then that violation is sufficient to confer standing. The fact that some putative class members subsequently completed an order does not negate the invasion of privacy that allegedly occurred at the time of the credit pull. The Court will not deny

5

certification on this basis.

### c. **Rule 23(a) Prerequisites**

Defendant does not contest the numerosity and adequacy of representation factors. The Court agrees that Plaintiff has satisfied the numerosity requirement and need not address it further. The Court also finds that Plaintiff has satisfied the commonality factor. Finally, however, the Court finds that Plaintiff has not satisfied typicality or adequacy. *See* Fed. R. Civ. P. advisory committee's note (2003) ("A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met.").

### i. **Commonality**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." To satisfy commonality, class members' claims "must depend upon a common contention such that determination of their truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (internal quotation marks omitted). Still, it is not required "that every question in the case, or even a preponderance of questions is capable of class wide resolution"; rather, "[s]o long as there is even a single common question, a would-be class can satisfy the commonality requirement." *Id.* (internal quotation marks omitted). Accordingly, "where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Id.* (internal quotation marks and alterations omitted).

Plaintiff sets forth as a common question in this case "whether Defendant's policy of pulling consumer reports was justified by a 'permissible purpose' under the statute," (Doc. 138 at 9). Defendant argues that this question cannot be resolved as to all class members with one stroke because the permissible-purpose inquiry turns on whether each individual plaintiff *intended* to initiate a transaction. To support this proposition, Defendant cites to the Court's Order denying summary judgment, which stated,

> The issue is not only whether Plaintiff initiated the

>transaction; it is also whether Defendant knew or should have known that Plaintiff *did not intend* to initiate the transaction. *See Rand v. Citibank, N.A.*, No. 14-CV-04772 NC, 2015 WL 510967, at *3 (N.D. Cal. Feb. 6, 2015) (the plaintiff was a longtime customer of the defendant and the defendant knew or should have known a new application was fraudulent before pulling a consumer report).

(Doc. 116 at 5). Defendant misconstrues this sentence. The focus of this aspect of the permissible-purpose inquiry is not the consumer's intent, but rather Defendant's knowledge—what "Defendant knew or should have known" about whether Plaintiff initiated a transaction. (Doc. 116 at 5). The Court's citation to *Rand* further emphasizes this point: the issue there was *whether the defendant bank knew or should have known* that it was an identify thief, rather than the plaintiff, who had initiated a credit application in the plaintiff's name. *Rand*, 2015 WL 510967, at *3 ("Rand has sufficiently alleged that Citibank knew or should have known that he did not initiate the credit transaction and that the credit report was thus not authorized by § 1681b(a)(3)(A).").

Having established that it is *Defendant's* actions and knowledge—not the consumers'—that determine whether there was a permissible purpose for the credit pulls, it becomes clear that this is a common question. Defendant does not dispute that its actions and knowledge were the same as to every putative class member, because the credit pull occurred automatically, without any human input, when each member pressed the "Next" button to move from step four to step five. (Doc. 138-8 at 10–11). Thus, the question of whether Defendant's policy (which by definition applied to all class members) was justified by a permissible purpose under the FCRA will have the same answer for all class members.[1] When a class representative alleges that a defendant's

---

[1] Contrary to Defendant's suggestion, this is not at odds with the Court's discussion of "comparison shopping" in its Order denying summary judgment. (Doc. 116). From Defendant's perspective, at the time of the credit pull, all class members had engaged in the same behavior: the completion of the first four steps of the order process. Because the credit check was automatic, Defendant could not have considered any other information—such as any indicators of comparison shopping—before pulling each customer's report. The objective question of whether the completion of the first four steps constituted the initiation of a transaction or instead mere "comparison shopping behavior" is a material issue of fact to be resolved at trial. (Doc. 116 at 6).

7

uniform policy violates the FCRA, courts find that commonality is satisfied. *See, e.g.*, *Rodriguez v. Experian Info. Sols., Inc.*, No. C15-01224-RAJ, 2018 WL 1014606, at *3 (W.D. Wash. Feb. 22, 2018); *De Santos v. Jaco Oil Co.*, No. 1:14-cv-0738-JLT, 2015 WL 4418188, at *5 (E.D. Cal. July 17, 2015); *see also Flores v. Dart Container Corp.*, No. 2:19-cv-00083 WBS JDP, 2021 WL 107239, at *4 (E.D. Cal. Jan. 12, 2021) ("Generally, challenging a policy common to the class as a whole creates a common question whose answer is apt to drive the resolution of the litigation." (internal quotation marks omitted)). Thus, the Court finds that the proposed class satisfies the commonality requirement.

### ii. Typicality

Rule 23(a)(3) requires that "the claims . . . of the representative parties are typical of the claims . . . of the class." To satisfy typicality, the representative's claims must be "reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons*, 754 F.3d at 685 (internal quotation marks omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (internal quotation marks omitted). The typicality inquiry focuses, then, on "the nature of the claim . . . of the class representative, and not [on] the specific facts from which it arose or the relief sought." *Id.* (internal quotation marks omitted).

Defendant first argument against typicality is similar to its argument against commonality—that Plaintiff's claims are not typical of the class because unlike other putative class members, she was "comparison shopping." (Doc. 146 at 20–21). As explained previously, however, Plaintiff's claims turn on *Defendant's* policies, processes, and conduct rather than Plaintiff's, so this argument does not carry weight.

Defendant next argues that Plaintiff lacks typicality because the harm she alleges—the invasion of her privacy—is unique to her. (Doc. 146 at 22). Thus, Defendant asserts, it does not apply to putative class members who completed an order, and those

class members lack Article III standing. But as explained above in Section III.b, any violation of the FCRA amounts to an injury and confers standing. The alleged harm to Plaintiff and all putative class members is the same, so this does not defeat typicality.

Defendant's third and final argument against typicality, however, has merit. Defendant argues that Plaintiff's claims are not typical of the proposed class because the class includes people who agreed to arbitration provisions and class-action waivers with respect to claims against Defendant. (Doc. 146 at 22–24). It is undisputed that Plaintiff, along with the other putative class members who did not complete an order with Defendant, are not bound by an arbitration agreement or class-action waiver with respect to claims against Defendant. Defendant asserts, though, that "a majority of putative class members entered into service agreements with [Defendant] by which they waived their right to participate in class actions and/or agreed to arbitrate any claims against [Defendant]." (Doc. 146 at 12). Defendant points to three such service agreements: (1) the CenturyLink High-Speed Internet Subscriber Agreement ("HSI Subscriber Agreement"), for customers who placed an order for residential internet; (2) the CenturyLink Prism TV Services Subscriber Agreement ("Prism Subscriber Agreement"), for customers who placed an order for Prism television; and (3) Lumen's Electronic Online Payment Terms and Conditions ("Electronic Payment Terms"), for customers who set up an online account.[2] (Doc. 146 at 13–14).

"[T]he Ninth Circuit has suggested, without expressly holding, that a class encompassing members with valid arbitration agreements and others not subject to the

---

[2] Plaintiff raises evidentiary objections to Exhibits 9, 10, and 11 attached to Defendant's Response (Docs. 146-10, 146-11, 146-12), which consist of various versions of the HSI Subscriber Agreement, Prism Subscriber Agreement, and Electronic Payment Terms that putative class members may have signed. Plaintiff argues that they are unauthenticated, irrelevant, and hearsay. (Doc. 152 at 5). At the class certification stage, however, the Court is free to consider inadmissible evidence. *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) (holding that the district court erred by rejecting evidence based solely on inadmissibility). Rather, "[t]he court may consider whether the . . . proof is, or will likely lead to, admissible evidence," and "the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage." *Id.* Here, the consumer agreements could almost certainly be presented in admissible form at trial, so the Court will not reject or discredit them.

arbitration agreements cannot be certified." *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 986 (N.D. Cal. 2019) (citing *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094 (9th Cir. 2018)). Likewise, in *Avilez v. Pinkerton Government Services, Inc.*, the Ninth Circuit held that "[t]he district court abused its discretion to the extent it certified classes . . . that include [members] who signed class action waivers" when the class representative did not. 596 F. App'x 579, 579 (9th Cir. 2015). This is because class members who signed such provisions "have potential defenses that [the class representative] would be unable to argue on their behalf." *Id.* Accordingly, district courts in this Circuit routinely hold that a plaintiff who did not sign an arbitration agreement or class-action waiver lacks the requisite typicality and adequacy to represent class members who did. *See Ellsworth v. Schneider Nat'l Carriers, Inc.*, No. 5:20-CV-01699-SB-SP, 2021 WL 6102514, at *2–3 (C.D. Cal. Oct. 28, 2021) (listing cases).

Notwithstanding that case law, Plaintiff cites to *Garcia v. Central Coast Restaurants, Inc.*, in which the district court stated, "The Ninth Circuit, however, has not foreclosed the possibility of a plaintiff who successfully challenged an arbitration agreement from representing a class of people bound by the same or similar arbitration agreements." No. 18-cv-02370-RS, 2022 WL 657972, at *4 (N.D. Cal. Mar. 4, 2022). The court there explained that the plaintiff "had already sought to make an unconscionability argument that would be applicable on a class-wide basis." *Id.* The circumstances underlying *Garcia* are not present here, though: Plaintiff has not successfully challenged an arbitration agreement or a class-action waiver at any point in this litigation, as these issues have not been raised until this Motion. To the extent Plaintiff argues that (1) the terms and conditions that putative class members agreed to at step four of the online order process contained an arbitration provision and/or class-action waiver and (2) that Defendant's concession that Plaintiff is not bound by any such terms amounts to a "successful challenge" of those terms by Plaintiff, the Court is unpersuaded. Even assuming that step four did contain such provisions and that a concession by the opposing party constitutes a "successful challenge"—which are questionable

assumptions—Plaintiff would have successfully challenged only the provisions found at step four, not any of the three service agreements that Defendant will apparently seek to enforce against putative class members. Step four's terms and the three service agreements are not "the same or similar" such that the statement from *Garcia* applies. The service agreements plainly contain the specific terms of their arbitration provisions and class-action waivers on their face (Docs. 146-10, 146-11, 146-12), whereas step four's terms and conditions merely link to the HSI Subscriber Agreement and generally mentions that it contains an arbitration provision, with no mention of a class-action waiver (Doc. 65-9).[3] As a result, the arguments that Plaintiff could advance regarding the enforceability of step four's provisions are not reasonably coextensive of the arguments of class members who signed the service agreements, making her atypical of the class.

Ninth Circuit case law makes clear that a plaintiff who did not sign a given arbitration agreement or class-action waiver cannot achieve certification by arguing that such provisions are unenforceable. *See O'Connor*, 904 F.3d at 1094; *Ellsworth*, 2021 WL 6102514, at *3. In addition to unenforceability, though, Plaintiff also argues that the service agreements do not prevent class certification because they are inapplicable to this dispute. Still, Plaintiff cannot argue as to the scope of a contract provision that she did not sign or otherwise accept. *See Tan v. Grubhub, Inc.*, No. 15-CV-05128-JSC, 2016 WL 4721439 (N.D. Cal. July 19, 2016) ("[Plaintiff] has no standing to challenge the applicability or enforceability of the arbitration and class action waiver provisions . . . because . . . they do not apply to him."), *aff'd sub nom. Lawson v. Grubhub, Inc.*, 13 F.4th 908 (9th Cir. 2021). Thus, even if the arbitration provisions or class-action waivers in the service agreements might be inapplicable or unenforceable—and to be sure, there appear to be colorable arguments in both directions on those issues—Plaintiff cannot be the one to advance those arguments, making her atypical of the class under Ninth Circuit

---

[3] This fact also demonstrates why it is questionable at best to assume that step four's terms and conditions even contained an arbitration agreement or class-action waiver.

law.

The Court must finally address Plaintiff's argument that Defendant has not proven that any putative class members agreed to an arbitration provision or class-action waiver. (Doc. 152 at 9). Indeed, "[m]ere speculation does not suffice to defeat class certification." *Hunichen v. Atonomi LLC*, No. C19-0615-RAJ-SKV, 2021 WL 5858811, at *9 (W.D. Wash. Nov. 12, 2021). Defendant admits that it has not specifically identified any putative class members who signed any of the service agreements. (Doc. 146 at 23 ("The precise identity of putative class members bound by these agreements is unknown, and, there is no automated way to make that determination.")). Defendant has, however, provided deposition testimony that at least 50% of its customers during the two-year class period became residential internet subscribers and that approximately 50% of customers created an online account. (Doc. 146 at 23; *see* Doc. 138-9 at 21, 36). Defendant has also presented deposition testimony that customers had to agree to the Electronic Payment Terms in order to create an online account (Doc. 138-9 at 18, 33), and that it would be "highly improbable" for a customer to receive residential internet services without agreeing to the HSI Subscriber Agreement (Doc. 138-9 at 37). The various versions of the service agreements show that they contained arbitration provisions and class-action waivers. (Docs. 146-10, 146-11, 146-12). Further, Defendant has provided an excerpt of a list showing customers who completed an online order for residential internet services between November 14, 2012 and November 14, 2014—in other words, Defendant has provided an excerpt of a list of putative class members who almost certainly agreed to at least the HSI Subscriber Agreement. (Doc. 148 at 2). All of this evidence, combined with the fact that Plaintiff seeks to certify a class of "hundreds of thousands of consumers" makes it impossible to believe that none of the putative class members are subject to an arbitration or class-action waiver. (Doc. 138 at 8). It therefore rises well above the level of mere speculation, showing that Plaintiff cannot satisfy the typicality requirement with respect to the proposed class.

///

### iii. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." For this requirement, the Court must consider whether Plaintiff or her counsel has any conflicts of interest with other class members and whether they will vigorously prosecute the case on behalf of the class. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Id.*

Although Defendant does not contest adequacy, the fact that some class members signed arbitration agreements and class-action waivers while Plaintiff did not defeats adequacy in addition to typicality. *See Lawson*, 13 F.4th at 913 (finding that "[t]he district court correctly held" that a plaintiff who did not sign a class-action waiver "could not satisfy the requirements in Rule 23(a) because he is neither typical of the class nor an adequate representative" because other class members did sign waivers). Thus, Plaintiff does not satisfy this prerequisite for the same reasons as discussed above.

### d. **Rule 23(b)(3) Requirements**

A class is certifiable under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court will examine predominance and superiority in turn.

### i. Predominance of Common Questions

The predominance inquiry focuses on "whether a proposed class is sufficiently cohesive to warrant adjudication by representation." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020) (internal quotation marks omitted). The question is "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotation marks omitted). "When

one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately . . . ." *Id.* (internal quotation marks omitted).

Defendant's argument against predominance is largely the same as its argument against commonality, as the two inquiries are related. Defendant primarily argues that individual issues will predominate over common issues because a transaction-by-transaction analysis would be required to determine liability. (Doc. 146 at 24). As explained above, though, whether or not Defendant had a permissible purpose to pull customers' credit reports between steps four and five does not depend on each individual customer's intent or any other individual consideration. Defendant previously acknowledged that "whether [Defendant] had a permissible purpose" is "the primary legal issue in this case." (Doc. 112 at 3). The Court agrees. That question, and the answer to it, being common to all putative class members, the proposed class satisfies the predominance factor.

### ii. Superiority of Class Treatment

The superiority requirement is designed "to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (internal quotation marks omitted). This analysis "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. 338. Factors to consider with respect to superiority include, but are not limited to, the following:

    (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

    (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

///

(C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

    (D)   the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *Wolin*, 617 F.3d at 1175.

Defendant argues that a class action is not a superior method to resolve this case because there are too many individualized questions involved, making it unmanageable. (Doc. 146 at 30). But as the Court has found, the predominating question in this case is whether Defendant's policy of pulling customers' credit prior to the completion of step five of the online order process violated the FCRA or whether it had a permissible purpose to do so. Given the uniformity of Defendant's policy as to all putative class members, this question is better resolved through a class action rather than through individual actions, particularly considering that the cost of bringing a case individually would almost certainly exceed the potential recovery. *See Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 641 (D. Or. 2015) (finding that superiority was met in an FCRA class action because, among other reasons, if required to litigate individually, "most class members would likely forego pursuing claims, since their individual damages are relatively small and litigating in federal court or elsewhere is costly" (internal quotation marks omitted)). Weighing all the relevant factors, a class action is the superior method to resolve this dispute.

## IV.   CONCLUSION

In sum, Plaintiff's proposed class cannot be certified for two reasons: (1) the class period is broader than the one set forth in the Complaint, and (2) some putative class members are subject to arbitration agreements and class-action waivers while Plaintiff is not. It appears clear that the class can be narrowed in a manner that would eliminate those issues. The Court has the inherent authority to modify an overbroad class definition on its own. *Victorino v. FCA US LLC*, 326 F.R.D. 282, 301–02 (S.D. Cal. 2018). The Court declines to do so here and will instead give Plaintiff the opportunity to define a class in accordance with this Order.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Certify Class (Doc. 138) is **denied without prejudice**. Plaintiff may file a renewed motion for class certification resolving the issues stated herein no later than **April 28, 2022**.

Dated this 7th day of April, 2022.

Honorable Steven P. Logan
United States District Judge