**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Lydia Bultemeyer,          )    No.  CV-14-02530-PHX-SPL
                         )
           Plaintiff,  )
                         )    **ORDER**
vs.                        )
                         )
CenturyLink Incorporated,  )
                         )
          Defendant.  )
                         )

Before the Court is Plaintiff Lydia Bultemeyer's Renewed Motion for Class Certification (Doc. 171). For the following reasons, the Motion will be granted.[1]

## I.    BACKGROUND

On April 6, 2014, Plaintiff Lydia Bultemeyer accessed Defendant CenturyLink, Inc.'s website and began an online order for residential internet services. (Doc. 1 ¶ 20). Defendant's online order process involved five steps. (Doc. 1 ¶ 18). Plaintiff completed the first four steps, which included entering her address and other personal information, selecting which service options she wanted to purchase, and clicking a checkbox indicating acceptance of terms and conditions. (Doc. 1 ¶ 21; Doc. 114 ¶¶ 23–43). After step four, Defendant automatically ran a credit report on Plaintiff, as it did for many consumers between steps four and five. (Doc. 1 ¶¶ 23, 24; Doc. 114 at 17). Plaintiff

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. See LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

reached step five—which asked for payment information and then allowed the customer to submit the order for processing—but she decided not to place an order and never completed step five. (Doc. 1 ¶¶ 22, 25).

On November 14, 2014, Plaintiff filed this putative class action alleging that Defendant violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b, by obtaining her credit report, and those of putative class members, without a permissible purpose. (Doc. 1). Defendant asserts that it did have a permissible purpose under § 1681b(a)(3)(F)(i) because it had "a legitimate business need for the information in connection with a business transaction . . . initiated by the consumer," arguing that each putative class member "initiated" a business transaction by completing the first four steps of the order process. (Doc. 30 ¶ 3–4).

The Court bifurcated the stages of this case, first allowing discovery and dispositive motions on Plaintiff's individual claim before proceeding to the class certification phase. (Doc. 34). After briefing of cross-motions for summary judgment (Docs. 64, 72), the Court dismissed the case for lack of subject matter jurisdiction, finding that Plaintiff suffered no concrete injury and thus lacked standing. (Doc. 85). On appeal, the Ninth Circuit reversed and remanded, holding that every violation of § 1681b violates a privacy interest sufficient to confer standing. (Doc. 99). This Court subsequently denied the parties' renewed cross-motions for summary judgment (Docs. 109, 111), finding that there were material issues of fact remaining as to whether Defendant had a permissible purpose for pulling Plaintiff's credit report. (Doc. 116).

Following class discovery, Plaintiff filed her first Motion to Certify Class (Doc. 138). After full briefing and oral argument, on April 7, 2022, the Court denied the Motion without prejudice. (Doc. 159). The Court rejected Plaintiff's proposed class for two reasons: "(1) the class period [was] broader than the one set forth in the Complaint, and (2) some putative class members [were] subject to arbitration agreements and class-action waivers while Plaintiff is not" such that the class did not satisfy Federal Rule of Civil Procedure ("Rule") 23(a)'s typicality or adequacy requirements. (Doc. 159 at 6, 15). On

April 22, 2022, Plaintiff filed a Petition for Permission to Appeal pursuant to Rule 23(f) with the Ninth Circuit, and this Court stayed the action pending the Ninth Circuit's ruling. (Docs. 162, 165). On September 23, 2022, the Ninth Circuit denied Plaintiff's Petition. (Doc. 169). This Court then lifted the stay and set a deadline for Plaintiff to file a renewed class certification motion. (Doc. 170). In accordance with that deadline, on October 17, 2022, Plaintiff filed the pending Motion, which has been fully briefed. (Docs. 171, 176, 177).

## II.   LEGAL STANDARD

Rule 23 governs class actions. Under Rule 23(a), a member of a class may sue as a representative party only if the class satisfies four prerequisites: numerosity, commonality, typicality, and adequacy of representation. After satisfying the prerequisites, the plaintiff must then show that the class falls into one of three categories under Rule 23(b). Here, Plaintiff seeks certification pursuant to Rule 23(b)(3). (Doc. 171 at 13). Rule 23(b)(3) requires that a plaintiff show predominance of common questions and the superiority of a class action.

"[P]laintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23 . . . ." *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258, 275 (2014); *see Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The court must rigorously analyze the facts of a class action to ensure that it comports with Rule 23. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).  In doing so, however, the court will consider merits questions only to the extent relevant to determining whether the proposed class has met Rule 23's requirements. *Amgen Inc.*, 568 U.S. at 465–66.

///

///

///

///

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   CLASS CERTIFICATION

Plaintiff asks the Court to certify the following class:

> Every individual in the United States about whom CenturyLink obtained a consumer credit report using the personal information the individual entered into CenturyLink's ecommerce website, from November 14, 2012 through [ ] November 14, 2014, and who did not sign an arbitration agreement or class action waiver with Defendant.

(Doc. 171 at 4). Defendant argues that the class fails to satisfy Rule 23(a)'s commonality requirement as well as Rule 23(b)'s predominance and superiority requirements. The Court agrees that numerosity, typicality, and adequacy of representation are satisfied and addresses the disputed issues in turn.

### a.   Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." To satisfy commonality, class members' claims "must depend upon a common contention such that determination of their truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (internal quotation marks omitted). Still, it is not required "that every question in the case, or even a preponderance of questions is capable of class wide resolution"; rather, "[s]o long as there is even a single common question, a would-be class can satisfy the commonality requirement." *Id.* (internal quotation marks omitted). Accordingly, "where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Id.* (internal quotation marks and alterations omitted).

The Court has already held that at least one of Plaintiff's proffered common questions—"whether Defendant's policy of pulling consumer reports was justified by a 'permissible purpose' under the statute"—satisfies the commonality requirement. (Doc. 159 at 6–8). Nonetheless, in opposing the renewed Motion for Class Certification, Defendant states that it "respectfully disagrees" with the Court's prior holding and

reargues the issue.[2] (Doc. 176 at 14). Specifically, Defendant argues that the permissible purpose inquiry depends on whether each putative class member had a subjective intent to initiate a transaction and if not, whether Defendant had indicia of that intent—both of which rely on individual evidence.

The Court has already rejected these same arguments, and Defendant did not seek reconsideration of or appeal those findings. It is true that a court may revisit its class certification decisions, but here, there have been no "subsequent developments in the litigation" that affect whether Plaintiff has satisfied the commonality prerequisite. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Even considering the substance of Defendant's arguments, for the reasons explained in the April 7, 2022 Order, the Court stands by its previous holdings that "it is *Defendant's* actions and knowledge—not the consumers'—that determine whether there was a permissible purpose for the credit pulls," and that "[f]rom Defendant's perspective, at the time of the credit pull, all class members had engaged in the same behavior: the completion of the first four steps of the order process." (Doc. 159 at 7 & n.1). Those holdings led to the conclusion, which the Court now reaffirms, that "the question of whether Defendant's policy (which by definition applied to all class members) was justified by a permissible purpose under the FCRA will have the same answer for all class members."[3] (Doc. 159 at 7). Accordingly,

---

[2] Defendant's clarification that its disagreement is respectful is gratuitous. It goes without saying that *all* arguments presented by counsel, as officers of the Court, are made with respect. Any argument made disrespectfully does not belong before the Court.

[3] The Court acknowledges that its previous class certification Order included a minor misstatement of the facts in its "Background" section, which stated that "[a]fter step four, Defendant automatically ran a credit report on Plaintiff, as it did for all consumers between steps four and five," citing to Plaintiff's Complaint. (Doc. 159 at 1). In fact, it is undisputed that Defendant did not automatically run a credit report on consumers between steps four and five if that consumer's identity could be authenticated using Defendant's existing internal records—for example, if the consumer was a previous or current CenturyLink customer or if the consumer had previously completed step four of the online order process. (Doc. 114 at 16–17). Still, all of the facts in the "Commonality" section of the Court's Order are accurate, as the Court stated that a "credit pull occurred automatically, without any human input, when each [*putative class*] *member* pressed the 'Next' button to move from step four to step five." (Doc. 159 at 7 (emphasis added)). Consumers who did not have their credit pulled fall outside the proposed class definition and thus are not putative class members, and Defendant does

Plaintiff has established the commonality requirement.

### b. Predominance

A class is certifiable under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry focuses on "whether a proposed class is sufficiently cohesive to warrant adjudication by representation." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020) (internal quotation marks omitted). The question is "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotation marks omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately . . . ." *Id.* (internal quotation marks omitted).

Here, Defendant argues that two individualized questions predominate. First, similar to its commonality argument, Defendant reasserts its "previously rejected" argument that "the putative class claims would require an individualized analysis of each class member's intentions to initiate an online order." (Doc. 176 at 16). Again, the Court reaffirms its conclusion in the April 7, 2022 Order that "whether or not Defendant had a permissible purpose to pull customers' credit reports between steps four and five does not depend on each individual customer's intent or any other individual consideration." (Doc. 159 at 14).  That issue is a common question and the predominant issue in this case.

Second, Defendant raises a new argument that "predominance fails because individualized evidence will be necessary to establish whether each putative class member must be excluded from any certified class because they signed a class-waiver or arbitration agreement."  (Doc. 176 at 19). Specifically, Defendant asserts that "Plaintiff

not dispute that when a credit pull did occur, it was automatic, without any human input.

failed to present any evidence as to how to identify and exclude from the class people who signed a service agreement containing a class-[action] waiver or arbitration agreement." (Doc. 176 at 19). Defendant contends that identifying class members would require a manual review of customer files which has not been done or requested. (Doc. 176 at 6–7, 19–20).

Defendant's argument fails for multiple reasons. First, the issue of identifying class members under the proposed definition is not truly a "question[ ] or law or fact" to be adjudicated but rather an administrative issue. Fed. R. Civ. P. 23(b)(3). The class definition does not call for any determinations on the merits and instead sets forth simple, objective criteria for identifying class members. *See Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 673 (N.D. Cal. 2011). Thus, it is not clear what this argument has to do with predominance at all, and Defendant cites no case law to demonstrate any connection. On the other hand, Plaintiff cites a litany of cases holding that the need for a manual review of individual information in order to identify class members is not a bar to certification. *See, e.g.*, *id.* at 673–76 ("It is not fatal for a class definition to require some inquiry into individual records, as long as the inquiry is not so daunting as to make the class definition insufficient." (internal quotation marks omitted)); *Peel v. BrooksAmerica Mortg. Corp.*, No. 8:11-cv-0079-JST (RNBx), 2012 WL 3808591, at *3 (certifying a class even though it would require a manual review of individual files to apply the class definition's objective criteria); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539–40 (agreeing with "[s]everal other courts [that] have found that the size of a potential class and the need to review individual files to identify its members are not reasons to deny class certification"). Otherwise, as Plaintiff highlights, defendants would be incentivized to spurn more efficient recordkeeping systems to prevent class certification. *See Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 545 (E.D. Cal. 2014). The identification of class members is not a predominating issue for certification purposes. Rather, the common question of whether Defendant had a permissible purpose to pull class members' credit reports predominates.

### c. Superiority

The superiority requirement is designed "to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (internal quotation marks omitted). This analysis "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. 338. Factors to consider with respect to superiority include, but are not limited to, the following:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *Wolin*, 617 F.3d at 1175.

Defendant's argument on this requirement focuses primarily on the last factor, arguing that "Plaintiff not only failed to identify the class for the Court, but also failed to provide even a proposed method for identifying the class." (Doc. 176 at 20). But the Ninth Circuit has held that "the language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification," and expressly "declin[ed] to adopt an administrative feasibility requirement." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017). With one exception, the cases Defendant cites in support of its argument predate *Briseno*'s clear rejection of an administrative feasibility requirement. The one exception is *Thomas v. County of Los Angeles*, where the plaintiffs alleged that over two-and-a-half years, inmates in county jail were forced to sleep on mattresses on the floor in violation of their Eighth and Fourteenth Amendment rights. 703 F. App'x 508, 510 (9th Cir. 2017).

The Ninth Circuit affirmed the district court's decertification of a class action because, among other reasons, "the plaintiffs presented no viable method of identifying and providing notice to the class, which was estimated to consist of at least one million members." *Id.* at 511. Specifically, the district court had found that no records would assist in identifying class members; the only way to do so would have been to mail notification to everyone who cycled through the jail system during the class period. *Thomas v. Baca*, No. CV 04-08448 DDP (SHx), 2012 994090, at *2 (C.D. Cal. Mar. 22, 2012).

The Court is not persuaded by Defendant's citation to *Thomas*, either. Most importantly, unlike *Briseno*, it is an unpublished memorandum disposition that is not precedent. *See Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020) (noting that the reasoning of unpublished dispositions "is rarely developed enough to acknowledge and account for competing considerations [or] reconcile precedents that could be seen as in tension with each other"). Moreover, here, unlike in *Thomas*, it is undisputed that there are existing records that would identify class members; Defendant merely asserts that a manual review may be difficult and time-consuming. (Doc. 176 at 6–7). Following *Briseno*, then, the Court will not require Plaintiff to demonstrate the administrative feasibility of identifying class members in order to establish superiority.

Defendant's remaining arguments do not defeat superiority, either. Defendant asserts that contrary to Plaintiff's arguments, putative class members could bring individual claims because the statute of limitations is tolled while this class action is pending, and that they have an incentive to do so because the FCRA allows for recovery of attorneys' fees. But these arguments merely suggest that individual actions are possible, not necessarily that they would be superior to a class action. As other courts have noted, class members may be unaware of their rights under the FCRA, may be unaware of the alleged violations, and may have little interest or motivation to bring their own lawsuit in the absence of actual damages—and even though attorneys' fees are recoverable, a class action is still far more efficient than individual actions. *See Ramirez*

*v. Trans Union, LLC*, 301 F.R.D. 408, 424 (N.D. Cal. 2014). Accordingly, the Court finds that a class action is the superior method of resolving this dispute.

### IV.   CLASS COUNSEL

Having found that Plaintiff has satisfied the prerequisites of Rule 23(a) and the requirement of Rule 23(b)(3), the Court will certify Plaintiff's proposed class. Rule 23(c)(1)(B) therefore requires that the Court also appoint class counsel. Pursuant to Rule 23(g)(1), the Court must consider (1) "the work counsel has done in identifying or investigating potential claims in the action," (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," (3) "counsel's knowledge of the applicable law," and (4) "the resources that counsel will commit to representing the class." Plaintiff's counsel has prosecuted this case on her behalf for more than eight years already. They have effectively identified and investigated potential claims, demonstrated knowledge of the law, and shown a willingness to commit the resources necessary to litigation. They are experienced in litigating consumer class actions, including FCRA cases. (Docs. 138-1, 138-2, 138-3). Accordingly, the Court finds that Plaintiff's counsel will fairly and adequately represent the interests of the class.

**IT IS THEREFORE ORDERED** that Plaintiff Lydia Bultemeyer's Renewed Motion for Class Certification (Doc. 171) is **granted.**

**IT IS FURTHER ORDERED** that pursuant to Rule 23(b)(3), the Court certifies a class defined as every individual in the United States about whom Defendant CenturyLink obtained a consumer credit report using the personal information the individual entered into CenturyLink's ecommerce website from November 14, 2012 through November 14, 2014 and who did not sign an arbitration agreement or class action waiver with CenturyLink.

**IT IS FURTHER ORDERED** that the Law Offices of Andrew J. Brown and the Thompson Consumer Law Group are appointed as class counsel.

///

**IT IS FURTHER ORDERED** that pursuant to the Court's January 8, 2021 Order (Doc. 121), a motion to approve a class notice shall be filed no later than **March 6, 2023**, or if this Order is appealed, no later than thirty (30) days from when the petition is denied or the Ninth Circuit issues an order.

Dated this 2nd day of February, 2023.

Honorable Steven P. Logan
United States District Judge

11