**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lydia Bultemeyer,<br><br>              Plaintiff,<br><br>vs.<br><br>CenturyLink Incorporated,<br><br>              Defendant. | No. CV-14-02530-PHX-SPL<br><br>**ORDER** |

      Before the Court is Plaintiff's Motion to Amend/Correct Clerk's Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 60(a) (Doc. 263), Defendant's Brief in Opposition (Doc. 266), and Plaintiff's Reply (Doc. 274). The Court now rules as follows.

      On September 16, 2024, the Clerk of Court entered judgment. (Doc. 251). The judgment reads: "[P]ursuant to the Court's Order filed September 16, 2024, judgment is entered in favor of Plaintiffs and against Defendant in the amount of $500.00 for statutory damages and $2,000.00 for punitive damages." (*Id.*). On September 30, 2024, Plaintiff filed this Motion requesting the Court amend the judgment pursuant to Rule 60(a) in order to comply with Rule 23(c)(3). (Doc. 263 at 2). Additionally, Plaintiff seeks to amend the judgment under Rule 60(a) to clarify that "judgment is entered in favor of Plaintiff and the Class and against Defendant CenturyLink, Inc. in the amount of $500.00 in statutory damages *per class member* and $2,000.00 in punitive damages *per class member*." (Doc. 263-1 at 2 (emphasis added)).

      Under Rule 60(a), a party may move to have the court "correct a clerical mistake or

a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). After an appeal has been docketed and is pending, a district court may only correct such a mistake with the appellate court's leave. *See id.* On October 16, 2024, Defendant filed an appeal with the United States Court of Appeals for the Ninth Circuit. (Doc. 273). The Ninth Circuit has stayed appellate proceedings of this case until this Court rules on the present Motion to Amend (Doc. 263), Defendant's Renewed Motion for Judgment as a Matter of Law (Doc. 267), and Defendant's Motion for New Trial (Doc. 269). (Doc. 276). Thus, the Court retains jurisdiction to rule on this Motion.

Rule 23(c)(3)(B) provides that the judgment in a class action must, "for any class certified under Rule 23(b)(3), include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members." Fed. R. Civ. P. 23(b)(3)(B). On February 2, 2023, this Court certified the class in this case pursuant to Rule 23(b)(3). (Doc. 178). Plaintiff requests the Court amend the judgment (Doc. 251) to include a description of those to whom the Rule 23(c)(2) notice was directed who have not requested exclusion, and whom the Court finds to be class members, in accordance with Rule 23(c)(3). (Doc. 263). On March 1, 2024, Plaintiff filed a Notice Regarding the Completion of Class Notice and Class Member Requests for Exclusion, which detailed that 56,075 potential class members received the class notice and zero recipients requested to opt out. *See* (Docs. 196 at 1, 196-1 at 3–4). In the class certification, the Court defined the class as:

> [E]very individual in the United States about whom Defendant CenturyLink obtained a consumer credit report using the personal information the individual entered into CenturyLink's ecommerce website from November 14, 2012 through November 14, 2014 and who did not sign an arbitration agreement or class action waiver with CenturyLink.

(Doc. 178 at 10).

Defendant opposes such an amendment to the judgment, arguing that the class should be decertified because some of the individuals provided class notice do not qualify

as class members, and therefore, the judgment should not include reference to the group that received class notice or a description of those who meet the class definition. (*See* Doc. 266 at 2–3). Defendant further argues that a count of class members amounting to Plaintiff's proposed class size of 56,075 should not be included in the judgment, as that number does not definitively reflect the correct class size. (*Id.* at 4–5). Defendant acknowledges that the reason the list of possible class members may not be limited strictly to individuals who meet the class definition is because of Defendant's difficulties searching its records to identify which individuals are class members. (Doc. 178 at 7).

This Court has repeatedly rejected Defendant's attempts to escape liability by challenging the sufficiency of the class list while also refusing to provide a complete and accurate record of individuals who qualify under the class definition. *See* (Doc. 178 at 9 ("[I]t is undisputed that there are existing records that would identify class members; Defendant merely asserts that a manual review may be difficult and time-consuming.")). As Plaintiff notes in its Reply, Defendant is the only party that knows—or could know—the identities of the individuals whose credit reports it obtained during the class period and who did not sign a class action waiver or arbitration agreement. (Doc. 274 at 2). Even if class members had checked their credit reports within a two-year period following Defendant's pull of their credit, the record demonstrates that it still would be unclear that it was CenturyLink who conducted the credit check, as Defendant's credit checks were conducted under the name "Qwest Landline." (Doc. 245 at 158). All told, Defendant is the *only* party who holds information on who meets the class definition, and as such, Defendant is the party responsible for providing that information. *See Campbell v. United States*, 365 U.S. 85, 96 (1961) ("[T]he ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary."); *Alaska Dep't of Env't Conservation v. E.P.A.*, 540 U.S. 461, 494 n.17 (2004) ("Among other considerations, allocations of burdens of production and persuasion may depend on which party—plaintiff or defendant, petitioner or respondent—has made the 'affirmative allegation' or 'presumably has peculiar means of knowledge.'" (citation

omitted)).

To that end, the Court rejects Defendant's argument that the present Motion should be denied "because there is no factual basis for the Court to make a finding as to the number of class members," as Defendant is the party that provided the evidence establishing the class size of 56,075. (Doc. 266 at 8). Defendant had ample opportunity to search its records and provide accurate, complete information on which individuals fall within the class. After undertaking a manual and algorithmic review of the Abandoned Cart Report it provided, which formed the basis of the class list, Defendant filed an unopposed Motion for Leave to Substitute Lists of Possible Class Members. (*See* Docs. 193; 193-1). On December 8, 2023, the Court granted that motion. (Doc. 195). The revised class list identified 48,665 unique individuals that Defendant was unable to identify as its customers, and 8,025 unique individuals that it identified as customers but could not confirm had signed a class waiver or arbitration provision. (Doc. 193 at 3). In seeking to update the class list, Defendant acknowledged that "[t]he updated list of possible class members excludes people on the prior lists whom Lumen has now determined are not class members because they signed arbitration and/or class-waiver agreements." (*Id.*). Additionally, Defendant noted that "any notice should only be sent to the possible class members" on the updated class list in response to Plaintiff's settlement administrator's concerns that providing notice to non-class members could dilute the effectiveness of the notice. (*Id.* at 4). Of the 56,690 individuals on Defendant's updated class list, Plaintiff successfully provided notice to 56,075 listed individuals. (Docs. 196 at 1; 196-1 at 3–4).

Along with the class list Defendant provided, Eric Fressle, CenturyLink's Lead Credit Analyst, testified at trial that Defendant ran external credit checks on approximately 12,000 to 15,000 potential customers per month during the class period, and that approximately 40 percent of those individuals did not complete the order process. (*See* Doc. 247 at 58–60). Even at the lowest end of Fressle's approximation, this testimony indicates Defendant ran external credit checks on roughly double the number of individuals than Defendant's proposed class list tallied. However, Defendant identified only 56,690

4

individuals as potential class members on its substitute class list, and only 56,075 of those individuals received class notice and the opportunity to opt out of litigation. (Docs. 193 at 3; 196 at 1). *See generally Besinga v. United States*, 923 F.2d 133, 137 (9th Cir. 1991) (finding that only putative class members who receive Rule 23(c)(2) notice are bound by the judgment and res judicata). Thus, the Court finds that the class includes—and the judgment applies to—the 56,075 individuals who received class notice, whom Defendant identified as individuals it ran credit checks on, and whom Defendant did not determine had signed a class action waiver or arbitration provision.

Although Defendant contends in its Response that it manually searched and identified one member of the class list who signed a class action waiver and thus does not qualify as class member (Doc. 266 at 6–7), Defendant fails to identify any other members on the class list exempt from the class, explain why it was unable to undertake similar manual searches to identify such individuals earlier in the proceedings, or propose a different number of class members. The Court rejects the argument that merely because Defendant either could not or would not thoroughly search the information that only it holds, and because it speculates that some members of the class list do not qualify as class members, no class members should recover. *See generally Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017) (rejecting argument that class certification requires an administratively feasible means of identifying class members because "Defendants will have similar opportunities to individually challenge the claims of absent class members if and when they file claims for damages."). Indeed, the Court is unpersuaded by the Defendant's concerns about non-class members receiving damages, as the Ninth Circuit has noted that Defendants can make individualized claim determinations at the claims administration stage, where "parties have long relied on claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court to validate claims." *Id.* (citations and quotations omitted). In any event, this Motion to Amend is the improper setting for Defendant's attempts to further litigate the class list, as this Motion solely

5

addresses the Court's duty to comply with Rule 23(c)(3)(B).

As such, the Court finds that the judgment may be amended in accordance with Rule 23(c)(3) to specify that individuals who received the class notice, did not request exclusion, and meet the above-stated class definition qualify as class members. This aligns with the Court's repeated findings that only individuals on the class notice list who meet the class definition constitute class members. (Docs. 235 at 7; 178 at 10). In sum, the Court elects to exercise its Rule 60(a) discretion to amend the judgment in accordance with Rule 23(c)(3) and to reflect the Court and the parties' shared understanding of the class bound by judgment at the time of class certification. Therefore, the Court will amend the judgment (1) to conform with Rule 23(c)(3)(B) and (2) to specify that the judgment is entered in the amount of $500.00 in statutory damages *per class member* and $2,000.00 in punitive damages *per class member*.

///
///
///
///

Case 2:14-cv-02530-SPL   Document 287   Filed 11/18/24   Page 7 of 7

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Amend/Correct Clerk's Judgment pursuant to Federal Rule of Civil Procedure 60(a) (Doc. 263) is **granted.**

**IT IS FURTHER ORDERED** that the Clerk shall **amend** the judgment (Doc. 251) to add the following language: "This judgment applies to the 56,075 individuals to whom the Rule(c)(2) notice was directed, who fall under the certified class definition, none of whom has requested exclusion, and whom the Court finds to be members of the certified class in this matter."

**IT IS FURTHER ORDERED** that the Clerk shall **amend** the judgment (Doc. 251) at lines 17, 18, and 19 to state: "IT IS ORDERED AND ADJUDGED that pursuant to the Court's Order filed September 16, 2024, judgment is entered in favor of Plaintiffs and against Defendant in the amount of $500.00 for statutory damages per class member and $2,000.00 for punitive damages per class member."

Dated this 15th day of November, 2024.

Honorable Steven P. Logan
United States District Judge

7