**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lydia Bultemeyer,<br><br>    Plaintiff,<br>vs.<br><br>CenturyLink Incorporated,<br><br>    Defendant. | No. CV-14-02530-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant CenturyLink Incorporated's Motion for New Trial (Doc. 269) and Supporting Memorandum (Doc. 270), Plaintiff Lydia Bultemeyer's Response (Doc. 280), and Defendant's Reply (Doc. 285). For the following reasons, the Motion is denied.[1]

**I. BACKGROUND**

On November 14, 2014, Plaintiff Lydia Bultemeyer filed this lawsuit alleging that Defendant CenturyLink, Inc. ("CenturyLink") violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b, by obtaining her credit report, and those of putative class members, without a permissible purpose. (Doc. 1). On February 2, 2023, the Court certified this matter as a class action pursuant to Federal Rule of Civil Procedure ("Rule") 23(b)(3) on behalf of:

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

> [E]very individual in the United States about whom Defendant CenturyLink obtained a consumer credit report using the personal information the individual entered into CenturyLink's ecommerce website from November 14, 2012 through November 14, 2014 and who did not sign an arbitration agreement or class action waiver with CenturyLink.

(Doc. 178 at 10).

On September 16, 2024, following a jury trial, judgment was entered in favor of Plaintiff. (Doc. 251). The jury found that Defendant violated the FCRA and awarded Plaintiff damages in the amount of $500.00 in statutory damages and $2,000.00 in punitive damages per class member. (*Id.*; Doc. 287). Defendant subsequently timely filed its Motion for New Trial. (Doc. 269).

## II.   LEGAL STANDARD

Rule 59(a) allows a trial court to grant a new jury trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a)(1). "Historically recognized grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citation and quotations omitted). "It is equally clear that erroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial." *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). Courts "may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski*, 481 F.3d at 729 (citation omitted).

## III.   DISCUSSION

Defendant argues that a new trial is warranted because (1) the jury verdict was against the clear weight of the evidence; (2) the jury instructions and verdict form were erroneous and improperly prejudicial to Defendant; and (3) the statutory and punitive damages are unconstitutionally excessive. (Doc. 270 at 4).

///

**a. Clear Weight of the Evidence**

Defendant argues that because Plaintiff did not provide evidence that CenturyLink obtained the credit reports of every single class member nor that CenturyLink willfully violated 15 U.S.C. § 1681b(f), the jury's verdict was against the clear weight of the evidence. (*Id.*). As the Court has explained *ad nauseum*, to require Plaintiff to submit individualized evidence on behalf of all class members "misunderstands the entire purpose behind a Rule 23 class action." (Doc. 295 at 4; *see also* Docs. 302 at 3; 235 at 7). This Court has repeatedly found that the issue of identifying class members and determining which individuals Defendant pulled the credit reports of is "not truly a 'question[] of law or fact' to be adjudicated but rather an administrative issue." (Doc. 178 at 7; *see also* Doc. 295 at 4). To the extent that Defendant argues that the jury verdict was against the clear weight of the evidence because Plaintiff did not provide evidence on behalf of every class member, the Court rejects Defendant's argument.

Second, as this Court explained in its January 31, 2025 Order denying Defendant's Renewed Motion for Judgment as a Matter of Law (Doc. 302), Plaintiff provided evidence sufficient that reasonable jurors could conclude that Defendant's conduct was willful. (*See id.* at 3–4). Plaintiff provided expert testimony about authoritative guidance from the Federal Trade Commission that Defendant's position that it had a permissible purpose in obtaining the class members' credit reports was unreasonable. (Doc. 249 at 536–38). The Court maintains that reasonable minds could differ the regarding the evidence supporting the verdict, and "[t]he district court cannot substitute its 'evaluations for those of the jurors.'" *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1084 (9th Cir. 2009) (citation omitted). As such, a new trial is not warranted on this ground.

Defendant further argues that because Plaintiff failed to provide evidence on whether the class members believed they initiated a transaction or believed that their privacy was invaded, the jury verdict was against the clear weight of the evidence. (Doc. 270 at 5). The class members' subjective beliefs on whether they initiated a transaction or whether they felt their privacy was invaded is irrelevant, as the case turned on whether

3

*Defendant* had a reasonable belief that it had a legitimate business need for the credit information. (*See* Doc. 302 at 3–4). The Court denies Defendant's Motion on this basis.

### b. Jury Instructions and Verdict Form

"A trial court has broad discretion in fashioning jury instructions." *Brubaker v. City of Tucson*, No. CV-10-00649-TUC-SMM, 2022 WL 16572007, at *6 (D. Ariz. Oct. 31, 2022) (citing *Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1044 (9th Cir. 1987)). Jury instructions must "fairly and adequately cover the issues presented, correctly state the law, and [not be] misleading." *Brewer v. City of Napa*, 210 F.3d 1093, 1097 (9th Cir. 2000).

Defendant argues that a new trial is warranted because the Court erred in its final jury instructions and jury verdict form on ten different grounds. The Court will address each in turn below.

### i. Burden of Proof Regarding Permissible Purpose

Defendant, relying on *Jabbari v. Farmer*, 965 F.3d 1001 (9th Cir. 2020), argues that the Court improperly shifted the burden to CenturyLink to prove it had a permissible purpose to obtain Plaintiff's and the class members' credit reports. (Doc. 270 at 7). Defendant argues that the Court improperly interpreted the Ninth Circuit's ruling in *Nayab v. Capital One Bank USA*, 942 F.3d 480 (9th Cir. 2019), to reach its conclusion on the burden of proof.

*Jabbari* considered the issue of whether a district court abused its discretion in certifying a class for settlement after determining that common questions predominated the class without undergoing a choice-of-law analysis. 965 F.3d at 1007. In that case, the class brought a claim under the FCRA. *Id.* at 1008. The Ninth Circuit merely recited the elements of an FCRA claim and did not provide a holding regarding the burden of proof of FCRA claims or whether that burden shifts under any circumstances. *Id.* Thus, *Jabbari* does not affect the Ninth Circuit's holding in *Nayab*, which does in fact opine on the burdens of pleading, proof, and production for the permissible purpose element under FCRA claims. *See Nayab*, 942 F.3d at 494–95.

Defendant argues that in *Nayab*, the burden of pleading, rather than the ultimate

burden of production, was at issue. (Doc. 270 at 7–8). However, the Ninth Circuit's analysis relied on case law discussing the ultimate burden of proof because "who bears the ultimate burden of proof and/or persuasion is indicative of who bears the initial burden of pleading." *Nayab*, 942 F.3d at 493. The Ninth Circuit explained that while the ordinary default rule places the burden of proof on the plaintiff, that rule is subject to exceptions. *Id.* at 494. Specifically, the Ninth Circuit stated that allocations of burdens of production and proof may shift to the defendant if the defendant has peculiar means of knowledge or evidence, or if holding otherwise would require the plaintiff to establish a negative, where evidence to the contrary could be readily produced by the defendant. *Id.* Likewise, "the burden of persuasion as to certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or exemptions." *Id.* (citing *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 57 (2005)). The Ninth Circuit ultimately determined that "the authorized purposes under § 1681b(a) are matters of exception that the defendant must plead as a defense." *Id.* at 495.

To the extent Defendant implies that the Court cannot rely on *Nayab* merely because it predates *Jabbari* (Doc. 270 at 7), such a suggestion is plainly frivolous. Additionally, to the extent Defendant implies the Court cannot rely on *Nayab* because "the *Nayab* court did not examine or cite any decision interpreting the FCRA," (Doc. 270 at 8), the Court rejects Defendant's argument. In *Nayab*, the Ninth Circuit spoke directly on the burden of proof on the element of permissible or authorized purposes for obtaining a credit report under the FCRA. *Nayab*, 942 F.3d at 493–95. This Court is bound by Ninth Circuit precedent. Therefore, the Court must follow the Ninth Circuit's holding on the burden of proof for this issue. To that end, the Court finds that it fairly, adequately, and correctly stated the law in its jury instructions regarding the burden of proof on Defendant's permissible purpose. As such, the Court denies Defendant's Motion for New Trial on this ground.

### ii. Burden of Proof Regarding Whether Century Link Obtained Credit Report on Every Class Member

There are no class members Defendant did not obtain the credit reports of because

by definition, the class members are only those individuals "about whom Defendant CenturyLink obtained a consumer credit report using the personal information the individual entered into CenturyLink's ecommerce website from November 14, 2012 through November 14, 2014 and who did not sign an arbitration agreement or class action waiver." (Doc. 178 at 10). Defendant has admitted to pulling the credit reports of consumers between steps four and five. (*See* Docs. 112 at 25; 114 at 16–17). As this Court noted in its May 13, 2024 Order, "there are some consumers who did not have their credit pulled automatically," and "[t]hese consumers fall outside the class definition." (Doc. 235 at 7). Again, the class members are *only* those individuals whom CenturyLink has *admitted* to pulling a credit report of between step four and five and who did not sign an arbitration agreement or class action waiver. (Doc. 178 at 10). By the very definition of the class, whether Defendant obtained the credit reports of all of the class members was not at issue in this class action suit, and as such, Defendant's argument that the Court erred by failing to instruct the jury on the burden of proof on the issue of whether Defendant obtained the class members' credit reports holds no weight.

### iii. Willful Violation

Defendant argues that the Court erred in instructing the jury that "Ms. Bultemeyer must show by a preponderance of the evidence that CenturyLink willfully obtained her consumer credit report," rather than instructing the jury that Plaintiff must show that CenturyLink "willfully failed to comply with the FCRA" when it obtained such credit reports. (Doc. 270 at 11). In the parties' Joint Proposed Jury Instructions, Defendant objected to the instruction because "[t]he burden of proof is on Plaintiff, not Defendant." (Doc. 201 at 35). Defendant made no mention of whether the instruction should be phrased as "willfully obtained" or "willfully failed to comply." (*Id.*). Nor did Defendant object on the record regarding the phrasing of the "willful" element. (Doc. 249 at 77). Rule 51(c) requires that a party object to a jury instruction in a timely manner, on the record, "stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c). Thus, Defendant waived its objection. *See generally United States v. Magdaleno*, 43 F.4th

1215, 1220 (9th Cir. 2022).

Under Fed. R. Civ. P. 51(d)(2), "[a] court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights." Here, the Court finds that there is not a clear and obvious error present. *United States v. Marcus*, 560 U.S. 258, 262 (2010) (plain error review first considers if there was an error and if so, if that error is "clear and obvious, rather than subject to reasonable dispute"). Moreover, the Court cannot conclude that the phrasing affected Defendant's substantial rights by affecting the outcome of the case, nor did it seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Id.* The Court provided an additional instruction to the jury that further explained what it must find to determine CenturyLink's conduct was willful:

> "Willfully" means that CenturyLink intentionally performed an act that violates the Fair Credit Reporting Act or acted in reckless disregard of Plaintiff's rights under the Fair Credit Reporting Act . . . A person may willfully violate the FCRA by adopting a policy with reckless disregard of whether the policy contravenes consumer rights under the FCRA.

(Doc. 252 at 19); *see also United States v. Moran*, 493 F.3d 1002, 1009 (9th Cir. 2007) ("When assessing jury instructions, we examine them 'as a whole, and in context.'"). The Court finds that it did not inaccurately state the law, and that the jury could have reasonably considered all of the evidence presented in trial and come to its conclusion. Defendant failed to establish how the alleged error impairs its substantial rights or seriously affects the "fairness, integrity, or public reputation of judicial proceedings." Fed. R. Civ. P. 51, 2003 note. Thus, the Court declines Defendant's Motion for New Trial on this basis.

### iv. Standard of Willfulness

Defendant argues that a new trial must be granted because the Court erred in rejecting its proposed instruction "that distinguished between a merely negligent violation and a willful violation." (Doc. 270 at 11). Defendant's proposed instruction provided:

> To prevail, Ms. Bultemeyer must prove not only that CenturyLink violated the Fair Credit Reporting Act but that such violation was also willful, and not merely negligent.

7

> "Willfully" means that CenturyLink intentionally violated the Fair Credit Reporting Act or acted in reckless disregard of the requirements of the Fair Credit Reporting Act. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, the conduct violating the Fair Credit Reporting Act was objectively unreasonable and its conduct presented an unjustifiably high risk of violating the Fair Credit Reporting Act that was so obvious that the company should have known its conduct violated the statute. You can determine that CenturyLink's conduct was not objectively unreasonable if you determine that the FCRA, and appellate court decisions and authoritative regulatory guidance did not make clear to CenturyLink that its conduct violated the FCRA.

(Doc. 201 at 62). Contrary to Defendant's assertions, if the Court had given Defendant's instruction, the Court would have (1) risked confusing the jury by bringing up negligence, which was not at issue in this case, and (2) misstated the law.

First, as Plaintiff notes in its response, the legal issue of whether Defendant negligently obtained the credit reports was not an issue before the jury. (Doc. 280 at 8). Instructing the jury to assess whether Defendant was merely negligent versus willful would have confused the issues and therefore would have been inappropriate.

Second, Defendant's proposed instruction misstates the law. Defendant argued the instruction should have included the sentence:

> Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, the conduct violating the Fair Credit Reporting Act was objectively unreasonable and its conduct presented an unjustifiably high risk of violating the Fair Credit Reporting Act that was so obvious that the company should have known its conduct violated the statute.

(Doc. 201 at 62). But the very case Defendant points to in support of this point, *Safeco Ins. Co. of America v. Burr*, relied on the common law standard of recklessness: conduct "entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007). The Supreme Court went on to hold that:

> [A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

8

*Safeco*, 551 U.S. at 69. The proposed standard—that Defendant should have known its conduct violated the statute in order to be held liable—is incorrect; instead, the *risk* of violating the law is what Defendant must have known or should have known. The Court's instruction, which provided that "[a] person is reckless if he acts 'knowing or having reason to know of facts which would lead a reasonable man to realize' that his actions were substantially risky" (Doc. 252 at 19), more accurately states the law.

In sum, the Court finds that its instructions fairly and adequately covered the issues presented, correctly stated the law, and avoided misleading the jury, contrary to Defendant's proposed instruction. *See Brewer*, 210 F.3d at 1097.

### v. Legitimate Business Need Examples

Defendant argues the Court erred in failing to instruct the jury on various conduct that qualifies as a legitimate business need sufficient to establish a permissible purpose under the statute. (Doc. 270 at 12). The Court accurately stated the law regarding the elements needed to establish a permissible purpose. (Doc. 252 at 18). The Court was not required to provide examples of what courts have found to constitute legitimate business needs that are not mentioned in the statute. *See Kim v. BMW Fin. Servs. NA LLC*, 702 F. App'x 561, 563–64 (9th Cir. 2017) (district court did not err when it provided elements of FCRA claim but declined to include case law on the meaning of a "reasonable" investigation under the FCRA). Moreover, the Court finds that Defendant had ample opportunity to put on its case with respect to what constitutes a legitimate business need, and further, that Defendant fails to explain how the alleged error was not harmless. A new trial is not warranted on this basis.

### vi. Definition of Statutory Term "Initiated"

Defendant argues that the Court erred in failing to include its proposed instruction on how the jury could interpret the statutory term initiate. (Doc. 270 at 13). Defendant requested the Court instruct the jury that (1) they are permitted to give the word "initiated" its ordinary meaning; and that (2) "[a]ccording to dictionaries, 'initiate' means to begin, commence, enter upon, to introduce, get going, start." (Doc. 201 at 57).

The Court's failure to tell the jury that they could use the ordinary meaning of the word "initiated" is not an error, as such an instruction would have been unnecessary. As Defendant notes, the statute does not define the term "initiated." (Doc. 270 at 13); *see also United States v. Ibrahim*, No. CR-11-0811 EMC, 2013 WL 5434156, at *15 (N.D. Cal. Sept. 27, 2013) (finding no error in declining to define statutory term when nothing in statute indicated the word was "used in any way that differs from its ordinary definition"). The Court finds there is nothing particularly confusing about the word "initiated" such that the jurors would not know its ordinary meaning. Thus, in light of the fact that the jury was unlikely to be confused by the Court's failure to define such an ordinary term as "initiated," the Court finds that it was not an error to decline to give Defendant's proposed instruction to the jury. *Id.*

Moreover, as Defendant notes, the issue of whether the class members initiated a business transaction was central to whether Defendant had a permissible purpose in obtaining credit reports and was hotly disputed in the case. (Doc. 270 at 13). Providing Defendant's proposed definitions, as opposed to letting the jury utilize the ordinary meaning and consider the evidence presented by the parties in the case, would have risked confusing the jury. Additionally, "[s]uch an instruction would inappropriately infringe on the jury's role as fact finder by telling them the conclusion they must draw from a set of facts." *Cheeks v. Gen. Dynamics*, No. CV-12-01543-PHX-JAT, 2015 WL 1299378, at *3 (D. Ariz. Mar. 23, 2015), *aff'd sub nom. Cheeks v. Gen. Dynamics C4 Sys. Inc.*, 684 F. App'x 658 (9th Cir. 2017). The Court therefore denies Defendant's Motion on this basis.

### vii. Consumer Consent

Defendant argues that the Court erred in rejecting its "proposed jury instruction that the FCRA does not require it to obtain a consumer's consent to obtain her credit report." (Doc. 270 at 13).

The Court did not err in refusing Defendant's instruction that consent was not needed for Defendant to have a permissible purpose in obtaining the class members' credit reports. The Court instructed the jury on what must be shown for CenturyLink to have had

a permissible purpose:

> To have a permissible purpose to obtain Ms. Bultemeyer's and class members' consumer credit reports, CenturyLink must demonstrate by a preponderance of the evidence that it had a legitimate business need for the information in connection with a business transaction that was initiated by Ms. Bultemeyer (and the class members). The requirement that a consumer initiate a business transaction is designed to protect a consumer's privacy and credit-related data by preventing companies from obtaining consumer credit reports that were not requested by the consumer.
>
> Congress intended the FCRA to only authorize a person to request a consumer report to determine an individual's eligibility for credit, insurance or employment. A consumer's inquiry about prices or product availability do not constitute the initiation of a business transaction.

(Doc. 252 at 18).

Here, the Court's instructions fairly and adequately covered the main issue—whether Defendant had a legitimate business need for the information in connection with a business transaction initiated by the class members—and Defendant had ample room to argue its theory of the case. While Defendant correctly notes that under the FCRA, consent is not the only way to establish a permissible purpose, Defendant "is not entitled to an instruction as to the inapplicability of a particular defense" that it did not submit, "even if the proposed instruction correctly states the relevant law." *Brubaker v. City of Tucson*, 2022 WL 16572007, at *7 (D. Ariz. Oct. 31, 2022). As such, the Court's failure to include the instruction on consent does not warrant a new trial.

### viii. Reason to Believe

CenturyLink argues that the Court improperly withdrew from the jury's consideration its defense that it had a permissible purpose to obtain a credit report if it had reason to believe it had a permissible purpose, even if the consumer did not intend to initiate a transaction. (Doc. 270 at 14). The Court rejects Defendant's assertion. As this Court has previously explained, and as the parties have previously agreed, the central question at issue was whether Defendant's interpretation that Plaintiff and the class members "initiated" a business transaction when they completed the first four steps of the order

process before abandoning their carts was objectively unreasonable. (Doc. 302 at 4). As this Court has previously stated, the class members' subjective intent regarding the initiation of a business transaction was irrelevant to this case. (Doc. 178 at 6). As such, Defendant's proposed instruction—which provides that "[s]eparately, even if the consumer did not intend to initiate a transaction with the user of credit report, a user has a permissible purpose to obtain a credit report if the user had reason to believe it had a permissible purpose in obtaining the report" (Doc. 201 at 57)—would have improperly raised the issue of the class members' intent and risked confusing the jury.

"A party is not entitled to any particular form of jury instruction, so long as the instructions fairly and adequately cover the relevant law." *Brubaker*, 2022 WL 16572007, at *6. The final instruction, as given, fairly and adequately covered the relevant law. Defendant had ample room to argue its case that it had a reasonable justification for its position—for its "reason to believe," as Defendant puts it—that Plaintiff and class members initiated a business transaction with CenturyLink and that it therefore had a permissible purpose in obtaining the credit reports. Defendant is not entitled to a new trial on this ground.

### ix. Time Limit on Deliberations

Defendant next argues that the Court's statement to potential jurors during voir dire that the trial was scheduled to conclude by 4:30 p.m. on Friday "inappropriately suggested a time limit on the jury's deliberations and therefore was prejudicial to CenturyLink." (Doc. 270 at 16). Defendant cites no law to support this proposition.

"[I]t is true that a trial court may not place a deadline on jury deliberations." *United States v. Duffy*, No. CR-22-08057-PCT-DGC, 2023 WL 8076301, at *1 (D. Ariz. Nov. 21, 2023). However, cases granting a new trial on this ground typically deal "either with an explicit time limit placed directly on the jury's deliberations, or with a charge which taken in context was likely to give the jury the impression that it was more important to be quick than to be thoughtful." *Id.* (citing *United States v. Green*, 523 F.2d 229, 236 (2d Cir. 1975)).

First, the Court provided the jurors the Ninth Circuit Model Jury Instruction 3.1,

which provides in part:

> You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.
>
> Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.
>
> It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

(Doc. 252 at 11). Additionally, the Court provided the instruction: "Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be." (*Id.* at 2). These model instructions made clear that "the jurors should make their own careful consideration of the evidence, should not infer from any action of the Court that a particular verdict was preferred, and should not change a good faith belief about the weight of the evidence simply to reach a verdict." *Duffy*, 2023 WL 8076301, at *2.

Second, the Court's statements about the trial schedule did not suggest that there was a deadline on their deliberations. The parties, in their Joint Proposed Pretrial Order, estimated that the trial would last 33 hours and would require four days. (Doc. 200 at 83). The Court stated that the trial would be finished "no later than 4:30 on Friday" and that "it's a four-day case." (Doc. 244 at 16). "These statements conveyed the Court's and the parties' expectation concerning the length of the trial–an important piece of information for jurors who are sacrificing their time to serve–but said nothing about a time limit on their deliberations." *Duffy*, 2023 WL 8076301, at *2.

Moreover, the Court notes that Defendant's own argument defeats itself: the jurors returned their verdict in under an hour, well before 4:30 p.m., and there is no indication that they needed more time to deliberate but were limited by the Court's acknowledgement

13

of the trial's schedule. As such, the Court finds that a new trial is not warranted on this basis.

### x. Failure to Separate Named Lead Plaintiff from Class Members on Verdict Form

Lastly, Defendant argues that the Court erred by failing to draw a distinction between Plaintiff and absent class members on the jury verdict form, such as by separating the verdict form questions to ask each question twice with respect to Ms. Bultemeyer and the class members separately. (Doc. 270 at 16; *see also* Doc. 203 at 4–6).

The Court is unaware of any class action case in which the jury was required to submit separate findings based on each individual class members' claim. Indeed, the proposition seems to refute the basic purpose of a class action. Defendant fails to cite to any law supporting this proposition. Defendant points to the Supreme Court's holding in *TransUnion v. Ramirez*, 584 U.S. 413 (2021), that some of the putative class members did not establish standing because they did not suffer the same injury in fact of other class members. (Doc. 270 at 17). There is no analogous question of standing present here, and *TransUnion* in no way indicates that a district court must issue separate verdict forms pertaining to different class members. The Court rejects Defendant's argument for a new trial on this premise.

### c. Unconstitutionally Excessive Damages

Defendant argues that the Court should grant its Motion for New Trial because the individual and aggregated statutory and punitive damages are unconstitutionally excessive. (Doc. 270 at 17).

### i. Statutory Damages

Under the FCRA, a plaintiff is entitled to statutory damages between $100 and $1,000 for any willful violation. 15 U.S.C. § 1681n(a)(1)(A). Here, the jury awarded statutory damages of $500.00 per class member. (Doc. 288).

The Ninth Circuit has indicated that the FCRA's statutory damages serve a compensatory function, because the actual harm consumers face "will often be small or

difficult to prove." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010). Additionally, the statutory damages provision serves a deterrence function. *Id.* "Allowing consumers to recover statutory damages furthers this purpose by deterring businesses from willfully making consumer financial data available, even where no actual harm results." *Id.* As such, Plaintiff and the class members are entitled to statutory damages irrespective of whether they can demonstrate any actual harm. *Id.* at 719.

In *Bateman v. American Multi-Cinema, Inc.*, the Ninth Circuit found that, "[t]here is no language in the statute, nor any indication in the legislative history, that Congress provided for judicial discretion to depart from the $100 to $1000 range where a district judge finds that damages are disproportionate to harm." *Id.* The court also acknowledged the impracticability in setting a "principled basis for determining when damages are and are not 'proportionate' to actual harm." *Id.* To that end, the Ninth Circuit found that "the plain text of the statute makes absolutely clear that, in Congress's judgment, the $100 to $1000 range is proportionate and appropriately compensates the consumer." *Id.* And "[d]espite Congress's awareness of the availability of class actions, it set no cap on the total amount of aggregate damages, no limit on the size of a class, and no limit on the number of individual suits that could be brought against a merchant." *Id.*

While the Ninth Circuit's analysis in *Bateman* took place at the class certification stage—before any statutory damages were awarded—it more recently declined to "determine whether courts have the authority to disturb a jury's statutory-damages award when it falls within Congress's prescribed range." *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1035 (9th Cir. 2020), *rev'd on other grounds and remanded*, 594 U.S. 413 (2021).

Here, the Court declines to find that the jury's award of $500—which falls in the middle of Congress's prescribed range—is unconstitutionally excessive. As noted above, lead Plaintiff Lydia Bultemeyer and the other class members were not required to show actual harm in order to recover under the statute. Moreover, the Court rejects Defendant's argument that the magnitude of damages in the aggregate is disproportional. Rather, the proportionality and Defendant's liability expanded at the same rate as the class size. *See*

*Bateman*, 623 F.3d at 719. To that end, the idea that a violator of the FCRA should be shielded from liability because it has a greater magnitude of violations—i.e., because it is *more* culpable—is antithetical to the statute's very purpose. The amount of statutory damages does not warrant a new trial.

### ii. Punitive Damages

Defendant also argues that the jury's $2,000 punitive damages award to each class member is unconstitutionally excessive. (Doc. 270 at 20).

Courts reviewing punitive damages must consider three guideposts:

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003). Of these guideposts, the degree of reprehensibility is the most important. In assessing this factor, the Supreme Court has instructed courts to consider whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Id.* at 419. Here, the harm was not physical, and CenturyLink's conduct did not evince an indifference to or reckless disregard to health and safety. However, other circuit courts have found that because "Congress has nonetheless authorized punitive damages in FCRA cases . . . the absence of the first or second factors [does not weigh] strongly against the punitive damages award." *Saunders v. Branch Banking & Tr. Co. Of Va.*, 526 F.3d 142, 153 (4th Cir. 2008). CenturyLink did not target any of the class members, but it is a large corporation that jeopardized the class members' creditworthiness. *See Miller v. Equifax Info. Servs., LLC.*, No. 3:11-CV-01231-BR, 2014 WL 2123560, at *5 (D. Or. May 20, 2014) ("When a plaintiff is of 'limited means' and is 'subject to the recklessness or malice

of a large corporate bureaucracy,' this subfactor is satisfied."). Additionally, the repetitiveness of Defendant's conduct weighs toward its reprehensibility. At trial, evidence was presented that CenturyLink pulled external credit reports of approximately 50 percent of customers who reached Step 4 on its website—thousands of individuals per month. (Doc. 247 at 352–54). As such, the conduct involved repeated actions on a grand scale. While CenturyLink's conduct probably was not "the result of intentional malice, trickery, or deceit," it was not a mere accident, and evidence at trial showed that Century Link employees were aware of the practice and had concerns. (Doc. 248 at 428–33). As such, Defendant's conduct was far from "mere accident." *See Ramirez v. TransUnion LLC*, 951 F.3d at 1036. In sum, while Defendant's conduct was not extraordinarily blameworthy, it is sufficiently reprehensible to support an award of punitive damages.

The second guidepost, which considers the ratio between the actual or potential harm suffered and the punitive damages award, does not weigh in favor of finding the damages are unconstitutionally excessive. While there is no "bright-line ratio which a punitive damages award cannot exceed," the Supreme Court has held that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm*, 538 U.S. at 425. In general, "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Id.* However, a "higher ratio *might* be necessary where 'the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine.'" *Id.* (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 582 (1996)). Here, the punitive damages are exactly four times the amount of compensatory damages, which falls within the realm of acceptability. *See Ramirez*, 951 F.3d at 1037 (lowering punitive damages to a 4 to 1 ratio where compensatory damages were near the high end of the statutory range).

Lastly, the third factor—the consideration of civil penalties—is inapposite in the FCRA context "because there is no 'truly comparable' civil penalty to an FCRA punitive-damages award." *Id.* (citing *Cortez v. Trans Union, LLC*, 617 F.3d 688, 724 (3d Cir. 2010);

*Saunders v. Branch Banking & Tr. Co. of Va*., 526 F.3d at 152; *Bach v. First Union Nat. Bank*, 486 F.3d 150, 154 n.1 (6th Cir. 2007)).

All told, the Court finds that the punitive damages award is not so excessive as to be unconstitutional. The Court declines to grant a new trial on this basis.

### IV.  CONCLUSION

Overall, Defendant has not met its burden to show that the verdict was against the clear weight of the evidence, that the trial was unfair, or that the damages were unconstitutionally excessive. The Court finds that the jury had a reasonable basis for its verdict. Accordingly,

**IT IS ORDERED** that Defendant's Motion for New Trial (Doc. 269) is **denied**.

Dated this 28th day of February, 2025.

Honorable Steven P. Logan
United States District Judge