**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lydia Bultemeyer,<br><br>            Plaintiff,<br><br>vs.<br><br>CenturyLink Incorporated,<br><br>            Defendant. | No. CV-14-02530-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant's Motion for Bond or Stay Execution (Doc. 301), Plaintiff's Response (Doc. 303), and Defendant's Reply (Doc. 304). Also pending before the Court is Defendant's Motion to Decertify Class (Doc. 259), which has been fully briefed (Docs. 264, 265). The Court now rules as follows.

**I.     BACKGROUND**

On November 14, 2014, Plaintiff Lydia Bultemeyer filed this lawsuit alleging that Defendant CenturyLink, Inc. ("CenturyLink") violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b, by obtaining the credit reports of Plaintiff and putative class members without a permissible purpose. (Doc. 1). On February 2, 2023, the Court certified this matter as a class action pursuant to Federal Rule of Civil Procedure ("Rule") 23(b)(3) on behalf of:

> [E]very individual in the United States about whom Defendant CenturyLink obtained a consumer credit report using the personal information the individual entered into CenturyLink's ecommerce website from November 14, 2012 through November 14, 2014 and who did not sign an arbitration

agreement or class action waiver with CenturyLink.

(Doc. 178 at 10).

On September 16, 2024, following a jury trial, judgment was entered in favor of Plaintiff. (Doc. 251). The jury found that Defendant violated the FCRA and awarded Plaintiff damages in the amount of $500.00 in statutory damages and $2,000.00 in punitive damages per class member. (*Id.*; Doc. 287). On November 18, 2024, the Court granted Plaintiff's Motion to Amend/Correct Clerk's Judgment pursuant to Federal Rule of Civil Procedure 60(a) to add the following language:

> This judgment applies to the 56,075 individuals to whom the Rule(c)(2) notice was directed, who fall under the certified class definition, none of whom has requested exclusion, and whom the Court finds to be members of the certified class in this matter.

(Doc. 287 at 7).

Defendant filed its Motion to Decertify Class on September 19, 2024, days after the conclusion of trial. (Doc. 259). On October 16, 2024, Defendant filed a Notice of Appeal to the Ninth Circuit Court of Appeals. (Doc. 273). The Ninth Circuit issued an order staying the appeal until the district court ruled on the parties' timely tolling motions, which did not include the Motion to Decertify Class. (Doc. 276). Subsequently, Defendant filed the present Motion for Bond or Stay Execution. (Doc. 301).

## II. LEGAL STANDARD

"Filing a notice of appeal typically divests district courts of jurisdiction over the matter appealed." *FTC v. Qyk Brands, LLC*, 2022 U.S. Dist. LEXIS 129205, at *4 (C.D. Cal. June 21, 2022) (citing *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). However, under Federal Rule of Appellate Procedure 8, parties "must ordinarily move *first* in the district court" for "a stay of the judgment or order of a district court pending appeal" or "approval of a bond or other security provided to obtain a stay of judgment." Fed. R. App. P. 8(a)(1) (emphasis added). Rule 62(b) outlines the procedure for a party to obtain a stay "[a]t any time after judgment is entered" by posting a supersedeas bond. Fed. R. Civ. P. 62(b). The bond protects the prevailing party "from the

risk of a later uncollectible judgment and compensates [them] for delay in the entry of final judgment." *N.L.R.B. v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988). "District courts have inherent discretionary authority in setting supersedeas bonds." *Rachel v. Banana Republic*, 831 F.2d 1503, 1505 n.1 (9th Cir. 1987). Courts in the Ninth Circuit frequently "set supersedeas bonds at 120[] percent of the amount of the final judgment, to account for interest, costs of appeal, and any damages for delay." *Sw. Fair Hous. Council v. WG Scottsdale LLC*, CV-19-00180-TUC-RM, 2023 WL 183680, at *1 (D. Ariz. Jan. 13, 2023) (collecting cases). Where posting a supersedeas bond in the full amount of judgment would impose an undue financial burden on an appellant, the Court may require the appellant to post a supersedeas bond of a lesser amount. *See, e.g.*, *Lowery v. Rhapsody Int'l, Inc.*, 2022 WL 267442, at *2 (N.D. Cal. Jan. 28, 2022). However, the "defendant bears the burden for why it should not have to post a full security bond." *Nat'l Grange of the Order of Patrons of Husbandry v. Cal. Guild*, 2019 U.S. Dist. LEXIS 77185, at *6 (E.D. Cal. May 7, 2019) (citing *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979)).

## III. DISCUSSION

### a. Clerk's Judgment

As a threshold matter, Defendant argues that the Amended Clerk's Judgment (Doc. 288) is not yet final pursuant to Federal Rule of Civil Procedure ("Rule") 58(b)(2) because "the Amended Judgment was not signed by the Court." (Doc. 301 at 2). Under Rule 58(b)(2), "the court must promptly approve the form of judgment, which the clerk must promptly enter, when . . . the jury returns a special verdict or a general verdict with answers to written questions[.]" Fed. R. Civ. P. 58(b)(2)(A). The Court did so upon the conclusion of trial. (*See* Docs. 250, 251). Subsequently, as noted above, the Court granted Plaintiff's Motion to Amend/Correct Clerk's Judgment pursuant to Federal Rule of Civil Procedure 60(a) to specify that the damages total $500 in statutory damages *per class member* and $2,000 in punitive damages *per class member*, and to add the following language:

This judgment applies to the 56,075 individuals to whom the

>Rule(c)(2) notice was directed, who fall under the certified class definition, none of whom has requested exclusion, and whom the Court finds to be members of the certified class in this matter.

(Doc. 287 at 7).

Under Rule 58(a)(5), "[e]very judgment and amended judgment must be set out in a separate document, but a separate document is not required for an order disposing of a motion . . . for relief under Rule 60." Fed. R. Civ. P. 58(a)(5). Thus, as Plaintiff correctly notes (Doc. 303 at 4), Rule 58 is abundantly clear that an Amended Judgment pursuant to Rule 60(a) does not require a separate document. Defendant does not submit an argument as to why Rule 58(a)(5) would not apply to the Rule 60(a) Amended Judgment in this case. The Court finds it need not take further action to finalize the Amended Judgment.

Moreover, to the extent that Defendant argues that the judgment is not "final" because the parties have yet to undergo a claims administration process, the Court rejects such argument. (Doc. 301 at 3–4). In class action cases where individualized damages calculations are needed—such as securities fraud class actions where each class member has suffered varying amounts of actual damages—courts have found that entry of final judgment is inappropriate until after those damages are properly assessed. *See generally In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 161 (S.D.N.Y. 2012) (finding there is no final judgment in securities litigation class action where "individual reliance and damages have yet to be resolved."); *Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1251 (11th Cir. 2003), *aff'd sub nom. Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005) (finding in case where the defendant overcharged dealers for fuel purchases that while liability "was decided properly on a class-wide basis . . . the determination of the amount that each dealer was overcharged during the class period must take place on an individual basis, taking into account the amount of compensatory damages to which each dealer is entitled[,]" and as such, entry of an aggregate final judgment was not required).

However, in this case, no such individualized damages calculations are needed. Defendant does not cite, nor is the Court aware of, any authority that supports the argument

that a judgment is not final—despite a jury's finding of liability on a class-wide basis and assessment of statutory damages per class member—until a claims administration process is held to verify that individuals who received class notice in fact are members of the class. Here, the jury determined that Defendant was liable and awarded per-violation statutory damages to each class member, and a judgment was entered as to that verdict. Identifying specific class members is not a separate claim or element necessary to final judgment. *Cf. Parks v. Pavkovic*, 753 F.2d 1397, 1402 (7th Cir. 1985) (Once there is a final judgment, "calculating the actual amount owed each class member . . . is not the resolution of a separate claim but merely the disbursement stage."); *Lyngaas v. Curaden AG*, 436 F. Supp. 3d 1019, 1029 (E.D. Mich. 2020), *aff'd*, 992 F.3d 412 (6th Cir. 2021) (noting that "a final judgment will be entered by the Court before the claim forms and affidavits are sent to potential class members" to conduct claims administration of TCPA class action where class members received statutory damages); *Krakauer v. Dish Network, LLC*, 1:14-CV-333, 2017 WL 3206324, at *5 (M.D.N.C. July 27, 2017) (noting that entry of a final judgment "is no doubt appropriate" even where some class member's identities were unknown in a TCPA case awarding per-violation statutory damages, but exercising discretion to decline entering final judgment prior to class administration process).

All told, the Court is unpersuaded by Defendant's argument that the judgment is not yet final and ripe for execution and therefore a supersedeas bond is unneeded to preclude execution of the judgment. As explained below, the Court finds that a supersedeas bond and stay of execution of the judgment—and therefore a stay of any claims administration process—is appropriate while this action is on appeal.

**b. Proposed Supersedeas Bond**

Here, Defendant seeks to post a bond in the amount of $85 million, which it asserts "is appropriate and sufficient to protect the interests of class members while the appeal is pending." (Doc. 301 at 5). Defendant also asserts that this proposed bond is appropriate due to the complexities involved in calculating the actual final judgment amount prior to any claims administration process. (*See id.* at 4–5). Plaintiff asserts that the Court should

only enter a stay of execution should Defendant post a bond in the amount of $168,225,000.00, which amounts to 120 percent of the total damages if all 56,075 individuals who received class notice qualify as class members. (Doc. 303 at 3, 8).

The parties have consistently disputed the size of the proposed class—specifically, whether all 56,075 individuals who Defendant identified as potential class members and who received the class notice qualify as class members under the class definition. Defendant has contended that it manually searched this class list and identified one member of the class list who signed a class action waiver and thus does not qualify as class member. (Doc. 266 at 6–7). Defendant argues that individualized claim determinations will be necessary to identify which of the 56,075 individuals that received the class notice qualify as class members. (Doc. 301 at 6). Because a claims administration process is needed and because that process will likely result in a reduction of class members who will receive damages, Defendant argues that a supersedeas bond accounting for approximately half of the 56,075 potential class members is appropriate.[1] (*Id.* at 7). Defendant asserts that this amount will adequately protect the interests of class members and "is further justified in this case because costs of maintaining the bond, which will be in the millions of dollars per year, will be taxable to plaintiff in the event of reversal on appeal." (*Id.*). Plaintiff asserts that Defendant has had ample opportunity to identify which of the 56,075 individuals who received class notice do not qualify as class members and has failed to do so. (Doc. 303 at 2–3). Accordingly, Plaintiff requests that the Court require a security bond representing 120 percent of the judgment as applied to all 56,075 individuals. (*Id.* at 3).

This Court has repeatedly found that Defendant is the party that identified these

---

[1] The Court is skeptical of Defendant's argument that trial evidence supports an expectation "that the claims administration process will result in distribution of damages to at most approximately 50% of the 56,075 individuals." (Doc. 301 at 6–7). Eric Fressle, CenturyLink's Lead Credit Analyst, testified at trial that Defendant ran external credit checks on approximately 12,000 to 15,000 potential customers per month during the class period, and that approximately 40 percent of those individuals did not complete the order process. (*See* Doc. 247 at 58–60). As this Court has previously noted (Doc. 287 at 4), this estimation would far exceed the 56,075 individuals included on Defendant's proposed class list.

6

56,075 individuals as those on whom it obtained a consumer credit report during the class period and whom they could not confirm had signed a class waiver or arbitration provision. (Doc. 193 at 3; Doc. 287 at 4). This Court has also repeatedly found that Defendant was the only party with the knowledge of which individuals it pulled external credit reports of and who did not sign class action or arbitration waivers with Defendant. (Doc. 178 at 7–9; Doc. 287 at 3–4; Doc. 295 at 3 n.2).

Defendant, as the party in possession of information about the individuals who it collected credit reports on and who did not sign a class action or arbitration waiver, has had multiple chances to identify which of the 56,075 individuals who received class notice as potential class members do not actually fall within the class definition. Defendant has thus far identified a single individual.[2] (Doc. 266 at 6–7). While this Court has acknowledged that a claims administration process is appropriate to ensure that non-class members do not receive damages (Doc. 287 at 5), the Court is dubious that the class size will be reduced by half through this process. As such, the Court finds it inappropriate to require a supersedeas bond that amounts to approximately half of the judgment should the class size remain the same. Instead, in its discretion, the Court will require Defendant to post a supersedeas bond totaling 120 percent of the potential damages calculated based on the proposed 56,075-individual class list. This amounts to $168,225,000.00.

### c. Motion to Decertify Class

Following the conclusion of trial, Defendant filed its Motion to Decertify Class (Doc. 259). Defendant subsequently filed its Notice of Appeal to the Ninth Circuit Court of Appeals. (Doc. 273). The Ninth Circuit issued an order staying the appeal until this Court ruled on the timely tolling motions filed on September 30 and October 15, 2024. (Doc. 276). These motions include Plaintiff's Motion to Amend/Correct Clerk's Judgment (Doc.

---

[2] The Court speculates that Defendant's manual searches of the proposed class list would have identified far more than one individual who does not qualify as a class member, if, as Defendant asserts, a claims administration process is likely to conclude that far less than half of the 56,075 individuals qualify as class members. Thus, the Court finds it unlikely that the class size will be so significantly reduced in the claims administration process as to warrant a major reduction of a supersedeas bond.

263), Defendant's Renewed Motion for Judgment as a Matter of Law (Doc. 267), and Defendant's Motion for New Trial (Doc. 269), all of which this Court has now ruled on. Upon filing of the appeal, this Court was divested of jurisdiction to rule on Defendant's Motion to Decertify Class. As such, the Motion (Doc. 259) will be denied without prejudice for lack of jurisdiction. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Bond or Stay Execution (Doc. 301) is **granted as modified**. Defendant shall post a supersedeas bond in the amount of $168,225,000.00.

**IT IS FURTHER ORDERED** that Defendant's Motion to Decertify Class (Doc. 259) is **denied without prejudice** for lack of jurisdiction.

Dated this 12th day of August, 2025.

Honorable Steven P. Logan
United States District Judge